UNITED STATES DISTRICT COURT
FOR DISTRICT OF MAINE

|  |  |
|---|---|
| COVETRUS, INC. and VETERINARY DATA SERVICES, INC. | ) ) ) ) |
| Plaintiffs, | ) ) ) Case Number: 2:21-cv-00097-LEW |
| v. | ) ) ) |
| ACTIAN CORPORATION | ) ) ) |
| Defendant. | ) ) ) ) |

**ANSWER AND COUNTERCLAIMS OF ACTIAN CORPORATION**

Defendant Actian Corporation ("Actian"), by and through its attorneys, files its Answer and Counterclaims to the Complaint filed by Plaintiffs Covetrus, Inc. ("Covetrus") and Veterinary Data Services, Inc. ("VDS") (collectively, "Plaintiffs").

**Nature of the Action**

1.      Actian denies the allegations in Paragraph 1 of the Complaint, including that VDS holds license rights to DataIntegrator or DI Software (the "Software") or that VDS has any rights to use the Software.

2.      Actian denies that VDS is authorized to use the Software.  Actian lacks knowledge and information regarding the full extent of VDS' use of the Software, and on that basis also denies the other allegations in Paragraph 2 of the Complaint.

3.      Actian lacks knowledge and information regarding the allegations in Paragraph 3 of the Complaint, and on that basis denies them.

4.      Actian admits that VDS has acted beyond the bounds of its rights to the Software

1

but denies that it has threatened Plaintiffs with any lawsuit.  Actian denies any other allegations in Paragraph 4 of the Complaint.

5.      Actian denies the allegations in Paragraph 5 of the Complaint.

6.      Paragraph 6 of the Complaint does not allege any facts to which a response is required.  To the extent any response is required, Actian denies.

### Parties

7.      Actian lacks knowledge and information regarding the allegations in Paragraph 7 of the Complaint, and on that basis denies them.

8.      Actian lacks knowledge and information regarding the allegations in Paragraph 8 of the Complaint, and on that basis denies them.

9.      Actian admits that it is a computer software company and that its products provide data management, integration and analytics functionality.  Actian denies the other allegations of Paragraph 9.

### Jurisdiction

10.      Actian admits the allegations in Paragraph 10 of the Complaint.

11.      Actian denies the allegations in Paragraph 11 of the Complaint.

12.      Actian denies the allegations in Paragraph 12 of the Complaint.

### Venue

13.      Actian denies the allegations in Paragraph 13 of the Complaint.

### Facts

14.      Actian lacks knowledge and information regarding the specific allegations in Paragraph 14 of the Complaint, and on that basis denies them.

15.      Actian denies the allegations in Paragraph 15 of the Complaint.

16.    Actian denies the allegations in Paragraph 16 of the Complaint.

17.    Actian denies the allegations in Paragraph 17 of the Complaint.

18.    Actian denies the allegations in Paragraph 18 of the Complaint.

19.    Actian lacks knowledge and information regarding the allegations in Paragraph 19 of the Complaint, and on that basis denies them.

20.    Actian denies the allegations in Paragraph 20 of the Complaint.

21.    Actian denies the allegations in Paragraph 21 of the Complaint.

22.    Actian denies the allegations in Paragraph 22 of the Complaint.

23.    Actian denies the allegations in Paragraph 23 of the Complaint.

24.    Actian denies the allegations in Paragraph 24 of the Complaint.

25.    Actian admits that on December 9, 2020 it requested completion of a self-audit form, and that it received results back in January 2021.  Actian denies the remaining allegations in Paragraph 25 of the Complaint.

26.    Actian denies the allegations in Paragraph 26 of the Complaint.

27.    Actian denies the allegations in Paragraph 27 of the Complaint.

28.    Actian denies the allegations in Paragraph 28 of the Complaint.

29.    Actian admits that it sent a litigation hold notice but denies the remaining allegations in Paragraph 29 of the Complaint.

30.    Actian admits that it sent to Covetrus documents and information relating to another lawsuit.  Actian denies the remaining allegations in Paragraph 30 of the Complaint.

31.    Actian denies the allegations in Paragraph 31 of the Complaint.

**COUNT I**
**(Declaratory Judgment, 28 U.S.C. § 2201, and 17 U.S.C. § 101, *et seq*.)**

32.    Actian repeats and realleges the responses set forth in each of the preceding

paragraphs as if fully set forth herein.

33.    Actian denies the allegations in Paragraph 33 of the Complaint.

34.    Actian denies the allegations in Paragraph 34 of the Complaint.

35.    Actian denies the allegations in Paragraph 35 of the Complaint.

36.    Actian denies the allegations in Paragraph 36 of the Complaint.

37.    Actian denies the allegations in Paragraph 37 of the Complaint.

38.    Actian denies the allegations in Paragraph 38 of the Complaint.

39.    Actian denies the allegations in Paragraph 39 of the Complaint.

To the extent any response is required to the headers of the Complaint, Actian denies any such allegations therein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.    The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE – NOVATION

2.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of novation.

### THIRD AFFIRMATIVE DEFENSE – CANCELLATION OF CONTRACT

3.    The contract or license under which Plaintiffs seek relief has expired, has been cancelled, or has been terminated.

### FOURTH AFFIRMATIVE DEFENSE – UNCLEAN HANDS

4.    Plaintiffs' claims should be denied because of their unclean hands.

## COUNTERCLAIMS OF ACTIAN CORPORATION

1.    Pursuant to Fed. R. Civ. P. 13, Counter-Plaintiff Actian Corporation ("Actian") complains and alleges against Counter-Defendants Covetrus, Inc. ("Covetrus") and Veterinary

Data Services, Inc. ("VDS") (collectively, "Counter-Defendants").

## PARTIES

2.      Counter-Plaintiff Actian Corporation ("Actian") is a Delaware corporation with its principal place of business at 2300 Geng Rd., Suite 150, Palo Alto, CA 94303.  Actian is a computer software company whose primary focus is hybrid data management, integration, and analytics.

3.      Based on its allegations in the Complaint, Covetrus is a Delaware Corporation having headquarters at 7 Custom House Street, Portland, Maine 04101, and providing animal health solutions, pharmacy services, and products to veterinary practices.

4.      Based on its allegations in the Complaint, VDS is a Kentucky Corporation having a headquarters at 200 Lexington Green Circle, Suite 190, Lexington, Kentucky 40503, and being in the business of providing data integration, conversion, and support services to the veterinary industry.

5.      Actian is informed and believes, and on that basis alleges, that at all relevant times, each of the Counter-Defendants was, and is, the agent, servant and/or employee of each of the other Defendants, and that all of the things alleged to have been done by each Defendant were done in the capacity of and as agent of the other Defendants.

6.      Actian is informed and believes, and on that basis alleges that Counter-Defendants were each acting as the agents of each other, are alter egos, and are therefore jointly and severally liable for the counterclaims asserted by Actian.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Counter-Defendants, *inter alia*, because Counter-Defendants have submitted to personal jurisdiction herein by filing their Complaint in

this Court.

8.    Venue exists in this judicial district because the relief sought herein is a compulsory counterclaim to the claim filed by Plaintiffs in this case and pursuant to 28 U.S.C. §§ 1367 and 1391(b).

## FACTS

9.    Plaintiff Actian is a computer software company headquartered in Palo Alto, California, whose primary focus is hybrid data management, integration, and analytics. Actian is renowned for its innovative data management, integration, and analytics technologies. Actian has an installed base of over 5,000 customers including large global enterprises, public sector entities, and small to medium enterprises.

### The Parties' Agreement

10.    One of the software products Actian develops is DataConnect, Version 9.2.7.10, also referred to as Data Integrator, or DI (the "Software"). The license agreement associated with the Software is the End User License Agreement ("EULA"), Version 9 (the "Agreement," attached hereto as Exhibit A). Section 15.3 of the Agreement provides that it is governed by the laws of the State of Texas exclusive of its choice of law provisions.

11.    The Software cannot be installed or used without accepting the Agreement.

12.    On or around January 31, 2020, Actian and Counter-Defendants entered into Sales Order Confirmation 744697 ("Sales Order," attached hereto as Exhibit B).

13.    The Sales Order confirmed that Counter-Defendants wished to purchase a Development license, referring to "Data Integrator – DI Prof On-Premise v9 Perpetual *Development*") (emphasis added). The Sales Order also confirmed that Counter-Defendants only wished to have a single development license (e.g., quantity of "1.00"), and a single unit of post-

obsolescence support (e.g., quantity of "1.00").  Thus, Counter-Defendants only purchased a single license to use the Software for one server with one core, and only for Development use.

14.     In its "Terms and Conditions," the Sales Order also referenced the "Actian Corporation Support Policy," and included its URL, "https://supportservices.actian.com/support-services/support#policy" (the "Support Policy," attached hereto as Exhibit C).

15.     The Support Policy provides, among other things, that "[f]or Developer licenses, the scope is limited to use of the software only for the purpose of developing, testing, prototyping and demonstrating your applications that interact with the software, and not for commercial or production use or any other purpose."  It further states that "You may not use the application developed under this license with the software for any internal data processing or for any commercial or production purposes, without obtaining a production license to the software."

16.     The Sales Order provides a "Start Date" of February 1, 2020 and an "End Date" of January 31, 2021.

17.     The Sales Order provides that its acceptance is "subject to … the license agreement" associated with Software.  The license agreement associated with the Software is the Agreement.

18.     The parties executed and accepted the Sales Order.  On January 29, 2020, Counter-Defendants signed the Sales Order, and on January 31, 2020 Actian's Vice President of Finance Marc Monahan also signed the Sales Order.

19.     Counter-Defendants accepted the terms of the terms of the Sales Order, the terms of the Support Policy, and the terms of the Agreement.

**Actian's Audit of Use**

20.     Section 15.5 of the Agreement provides that Counter-Defendants will "maintain

sufficient records, logs, and other materials ('Records') sufficient to document that your use of the Software is in accordance with the terms of this Agreement."  It further provides that Actian "may audit such Records upon reasonable notice."

21.    Pursuant to its audit rights, Actian informed Counter-Defendants on December 9, 2020 that the maintenance term of the DataConnect licenses for Counter-Defendants would soon be coming up for renewal.  Actian further informed Counter-Defendants that before it was able to provide a renewal quote, it was required to obtain a completed self-audit form, along with the results of the associated licensing utilities.  To ensure adequate time to complete the renewal, Actian requested the audit results by December 23, 2020.

22.    On December 16, Counter-Defendants responded that their team was "concerned about the deadline, especially if a full inventory is required," and therefore requested an extension of the December 23 deadline to complete the audit.  In response to these concerns, and to allow a full inventory of use, Actian agreed to extend the deadline to January 15, 2020.

23.    On January 15, 2021, Counter-Defendants returned the self-audit form and information.

### The Breaches and Unlicensed Uses of Counter-Defendants

24.    The audit results contained evidence of uses that were outside the scope of the license granted in the Agreement, and that were in breach of the terms of the Agreement.  Actian has never authorized any such uses.

25.    For example, the audit results showed that Counter-Defendants were using the Software for approximately 12 users, on 21 unique machines, across 112 total cores.  This use was outside the scope of the "Grant of License" provided in Section 1.A of the Agreement, which provided a license to install the Software "only in a single location on a hard disk or other storage

device," and required Counter-Defendants to "acquire and dedicate a license for <u>each individual</u> who will use the Software" (emphasis added).

26.     As another example, the audit showed that Counter-Defendants were using the Software for commercial purposes and to provide services to third parties.  This includes without limitation use of the Software to host or support "various" customers, to "convert data from one system to a new one for our clients locally," and uses of "maps/processes to migrate individual concepts of one system to an intermediate Access or Microsoft SQL database, then use other maps/process to move from that intermediate database to the format our client expects."  Such uses fall outside the scope of the license in Section 6 of the Agreement, which excludes any use of the Software "in any manner to provide … computer services to third parties without prior written approval of [Actian]."

27.     As another example, in Section 4 of the Agreement, Counter-Defendants agreed not to use the Software "Except as expressly authorized in this Agreement."  Counter-Defendants' commercial uses were not expressly authorized by the Agreement.

28.     The parties held a call on January 29, 2021 to discuss the audit results.  On the call, Counter-Defendants confirmed that the results of the audit were accurate.

### Counter-Defendants' Prior Uses of the Software

29.     Counter-Defendants were also using the Software in prior years, including without limitation since at least 2015.  Such uses were pursuant to previous orders from Counter-Defendants in which they accepted the same or similar provisions as the Sales Order, the Support Policy, and the Agreement.

30.     For example, attached hereto as Exhibit D is a February 4, 2015 quote from Actian, the terms of the applicable support policy at the URL contained in the quote, and a purchase order

from Counter-Defendants accepting those terms.

31.     The quote provides that the acceptance by Counter-Defendants was "SUBJECT TO THE TERMS OF … THE LICENSE AGREEMENT," which again refers to the terms of the Agreement.   The quote also references the Actian Support Policy, with a URL to http://www.actian.com/supportservices/support#policy, which, among other things, again explains the scope of Developer Licenses using the same language as the Support Policy attached as Exhibit C.

32.     Counter-Defendants accepted the terms of the quote, the terms of the Agreement, and the terms of the Support Policy.

### Actian's Efforts to Avoid Litigation

33.     To avoid litigation, Actian offered Counter-Defendants a license to cover their past, current and future unauthorized uses, and presented a proposal to Counter-Defendants on February 8, 2021.  Counter-Defendants refused this offer, and instead filed this action.

34.     On information and belief, Counter-Defendants' unlicensed use and exploitation of the Software is daily, ongoing, and continues to the present.

### COUNT I
### BREACH OF CONTRACT
**(Against Counter-Defendants Covetrus, Inc. and Veterinary Data Services, Inc.)**

35.     Actian restates and incorporates by reference every allegation of the preceding Paragraphs.

36.     A contract exists between Actian and Counter-Defendants, as embodied in the Agreement attached hereto as Exhibit A, the Sales Order attached hereto as Exhibit B, the Support Policy attached hereto as Exhibit C, and the other prior orders including but not limited to the quote, support policy, and purchase order attached hereto as Exhibit D.

37.    Counter-Defendants materially breached the Agreement by engaging in wrongful conduct, including without limitation the following (collectively, the "Breaches"):

    a.  Counter-Defendants' use by approximately 12 users on approximately 21 unique machines across approximately 112 total cores breached the Agreement, including without limitation Section 1.A of the Agreement, which authorizes Counter-Defendants to install the Software "only in a single location on a hard disk or other storage device," and required them to "acquire and dedicate a license for each individual who will use the Software";

    b.  Counter-Defendants' use of the Software to host or support "various" customers, to "convert data from one system to a new one for our clients locally," and to use "maps/processes to migrate individual concepts of one system to an intermediate Access or Microsoft SQL database, then use other maps/process to move from that intermediate database to the format our client expects" breaches the Agreement, including without limitation Section 6, which prohibits any use of the Software "in any manner to provide … computer services to third parties without prior written approval of [Actian]";

    c.  Counter-Defendants' commercial uses of the software are a breach of its contractual obligations and a breach of the terms of the Development license that it obtained;

    d.  Counter-Defendants' uses, including those identified above, are not expressly authorized by the Agreement and breach Section 4 of the Agreement, which provides that Counter-Defendants may not use the Software "Except as expressly authorized in this Agreement"; and

    e.  Such other breaches as may be identified by Actian.

38.    The Breaches are ongoing and occur on a daily basis.

39.    As a direct and proximate result of the Breaches, Actian has suffered harm and damages, including without limitation lost licensing revenue and lost fees.

40.    Actian is entitled to damages for the Breaches, including without limitation compensatory damages, indirect damages, and consequential damages.

41.    Actian is also entitled to prevailing party attorneys' fees, as authorized under Texas Civil Practice and Remedies Code Section 38.001, and under other relevant law.

## COUNT II
## COPYRIGHT INFRINGEMENT
**(Against Counter-Defendants Covetrus, Inc. and Veterinary Data Services, Inc.)**

42.    Actian restates and incorporates by reference every allegation of the preceding Paragraphs.

43.    Actian is the owner of valid copyrights in the Software, which are registered under Copyright Registration Nos. TX0008902355, TX0008902344, TX0008902360, TX0008902319, TX0008898417, and TX0008899134 (collectively, the "Copyrights"). Registration information for the Copyrights attached hereto as Exhibit E).

44.    Counter-Defendants' ongoing and past unlicensed uses are outside the scope of the limited license granted by Actian in the Agreement. Such unlicensed uses of the Software constitute infringement of the Copyrights, and include without limitation the following (collectively, the "Infringements"):

a.    Unlicensed uses of the Software by approximately 12 users on approximately 21 unique machines across approximately 112 total cores;

b.    Unlicensed uses of the Software to host or support "various" customers;

c.    Unlicensed uses of the Software to "convert data from one system to a new one for

12

our clients locally";

    d.   Unlicensed uses of the Software for "maps/processes to migrate individual concepts of one system to an intermediate Access or Microsoft SQL database, then use other maps/process to move from that intermediate database to the format our client expects";

    e.   Counter-Defendants uses are all unlicensed pursuant to Section 14 of the Agreement, which provides for automatic termination of the license granted in Section 1 of the Agreement upon breach of any of its terms and conditions; and

    f.   Such other unlicensed uses as may be identified by Actian.

45.    The Infringements occur daily and are ongoing to the present day.

46.    Counter-Defendants' infringement was and continues to be willful and intentional.

47.    Counter-Defendants have continued to exploit the Software in violation of Actian's exclusive copyright rights, constituting infringement of the Copyrights.

48.    Counter-Defendants' infringement was and continues to be willful and intentional.

49.    As a direct and proximate result of Counter-Defendants' wrongful conduct, Actian is entitled to damages in an amount to be proven at trial. Actian's damages include without limitation Actian's actual damages, profits attributable to infringement, statutory damages, willful infringement, and prevailing party attorneys' fees as set forth in 17 U.S.C. § 505 and under other relevant law.

## PRAYER FOR RELIEF

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against Counter-Defendants Covetrus and VDS as follows:

1. For actual and compensatory damages in an amount to be proven at trial;

2. Indirect and consequential damages in an amount to be proven at trial;

3. For prejudgment interest on all damages awarded at the maximum allowable rate;

4. An order finding that the Counter-Defendants are liable for breach of contract;

5. An order finding that Counter-Defendants are liable for copyright infringement;

6. A preliminary injunction against Counter-Defendants enjoining them and all of their officers, directors and personnel from further breaches of the Agreement;

7. A preliminary injunction against Counter-Defendants enjoining them and all of their officers, directors and personnel from further acts of copyright infringement;

8. An award of Actian's actual damages for copyright infringement;

9. An award of Covetrus' and VDS' profits attributable to copyright infringement;

10. An award of statutory damages for copyright infringement under to 17 U.S.C. § 504(c)(1);

11. A finding of willful and intentional copyright infringement, and an award of enhanced damages under 17 U.S.C. § 504(c)(2);

12. An award of all costs in this action;

13. An award of Actian's attorneys' fees as set forth in Texas Civil Practice and Remedies Code Section 38.001 and under other relevant law;

14. An award of Actian's attorneys' fees as set forth in the copyright statute, 17 U.S.C. § 505 and under other relevant law;

15.     That the claim asserted by Plaintiffs Covetrus, Inc. and Veterinary Data Services,

Inc. be denied in its entirety and all relief requested therein should be denied; and

16.     For all such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by

jury of any issues so triable by right.

Dated: May 27, 2021

By: */s/ Ryan E. Hatch, Esq.*

RYAN E. HATCH
Hatch Law, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: (310) 279-5076
ryan@hatchlaw.com
*Admitted pro hac vice*

*/s/ Adam S. Taylor, Esq.*
Adam S. Taylor, Esq.
H. Ilse Teeters-Trumpy, Esq.
Taylor, McCormack & Frame, LLC
30 Milk Street, 5th Floor
Portland, ME  04101
Tel: (207) 828-2005
ataylor@tmfattorneys.com
iteeterstrumpy@tmfattorneys.com

*Attorneys for Defendant/Counterclaim Plaintiff
Actian Corporation*