UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| COVETRUS, INC. and ) <br> VETERINARY DATA SERVICES, INC. ) <br> ) <br>        Plaintiffs ) <br> ) <br> v. ) <br> ) <br> ACTIAN CORPORATION ) <br> ) <br>        Defendant ) | Case No. 2:21-cv-00097-LEW |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Covetrus, Inc. ("Covetrus") and Veterinary Data Services, Inc. ("VDS") (Covetrus and VDS, collectively, "Plaintiffs"), by and through their undersigned counsel and in support of their complaint for declaratory judgment against Defendant Actian Corporation ("Actian"), aver as follows.

**Nature of the Action**

1. VDS holds license rights to use Actian's Data Integrator v. 9 Software, also referred to as Data Integrator or DI Software (sometimes herein, the "Software"). The Software allows VDS to map and copy data from one system or application to another system or application.

2. VDS is authorized to and does use the Software for its conversion service: where it maps historical data from veterinary office computer systems, moves that data into VDS's system, and reconfigures the data for use going forward with practice information management services ("PIMS"). These practice information management services are VDS's customers, while the veterinary offices are customers of the PIMS. This is VDS's sole use of the Software. The Software is never placed on a veterinary office system or a practice management information services' system in this process.

3. Covetrus owns businesses and services in the veterinary industry and is the ultimate parent of VDS. Covetrus does not itself use the Software and is not a party to VDS's license with Actian.

4. Actian has alleged that VDS has acted beyond the bounds of its rights to the Software and has threatened both Plaintiffs with suit for copyright infringement and breach of VDS's license contracts.

5. Plaintiffs deny that they are in breach of their license agreements and/or that they have infringed any of Actian's copyrights.

6. By this action, Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201 and 17 U.S.C. § 101, *et seq.*, including declarations, as more specifically described below, that: (i) Plaintiffs have not infringed Actian's copyrights; (ii) VDS has been licensed at all relevant times and has not committed a breach of any contract or license with Actian; (iii) Covetrus is not a party to the VDS license with Actian and has no contract liability under that license; or, (iv) in the alternative, Plaintiffs' infringement of any copyright held by Actian was not willful, and (v) Actian's claims are barred by statute of limitations, misuse, unclean hands, and/or equitable estoppel.

**Parties**

7. Covetrus is a Delaware Corporation with its headquarters located at 7 Custom House Street, Portland, Maine 04101. Covetrus, Inc. is the indirect parent of VDS. Covetrus owns companies in the veterinary and animal health industry in the U.S. and other countries. Its subsidiaries and indirect subsidiaries provide technology solutions and pharmacy services and products to veterinary practices.

8. VDS is a Kentucky Corporation with its headquarters located at 200 Lexington Green Circle, Suite 190, Lexington, Kentucky 40503. Among VDS businesses, VDS is in the

business of providing data integration, conversion, and support services to PIMS vendors that serve the veterinary industry.

9. Actian is a Delaware Corporation with its headquarters located at 500 Arguello Street Suite 200, Redwood City, California 94063. Actian is a computer software company whose products focus on data management and integration and analytics.

## Jurisdiction

10. This case arises under the Copyright Laws of the United States, 17 U.S.C. § 101, *et. seq.,* and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (copyright jurisdiction). This court also has jurisdiction over the contract matters under its supplemental jurisdiction as the copyright and contract claims are intertwined and arise out of overlapping facts. 28 U.S.C. § 1367.

11. There is an actual controversy between Plaintiffs and Defendant within this Court's jurisdiction that can be resolved by declaring the rights and obligations of the Parties, specifically whether Covetrus or VDS has breached any contract or license with Actian or infringed any of its copyrights, or, alternatively, if so whether the infringement has been willful, and if Actian's claims are barred by statute of limitations, misuse, unclean hands, and/or equitable estoppel.

12. This Court has personal jurisdiction over Actian inasmuch as Actian has engaged in business activities in the State of Maine. Such activities include: (i) sending invoices to Plaintiffs' offices in Portland, Maine; (ii) sending a request for a self-audit of the Software to a Covetrus' Controller in Portland, Maine; (iii) conducting an extensive course of dealing regarding its copyrights and licensing program with Covetrus employees in Maine, including sending a demand for payment and a litigation hold notice to Portland, Maine instructing Plaintiffs to preserve extensive records (many of which are located in and/or managed from Plaintiffs' headquarters in Portland, Maine). Maine has an interest in fairly resolving accusations of copyright

infringement and breach of contract against its residents and in providing them with a forum for prompt resolution of such disputes. The exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. U.S.C.A. Const. Amend. 14; M.R.S.A. Const. Art. 1, § 6-A; 14 M.R.S.A. § 704-A.

## Venue

13. Because Actian is subject to personal jurisdiction in the State of Maine, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue is proper in dispute within federal copyright jurisdiction wherever the defendant can be found). Venue also is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims occurred in this District.

## Facts

### A. VDS's Use of the Software

14. VDS provides a "conversion service" to vendors of PIMS that serve veterinary practices. A PIMS is typically a subscription service where a veterinary practice can use the PIMS for any one or more of its capabilities, including storage, configuration, display and access to the practice's data (*e.g.,* patient records).

15. When an established veterinary practice subscribes to a PIMS it typically has the option of maintaining its historical records on its existing system, having its own staff input historical data into the PIMS or using its IT or another vendor to do so, or opting for a conversion option offered by its PIMS vendor. The "conversion" takes the relevant information off of the veterinary practice's system, reformats it to match the PIMS and copies it into the PIMS.

16. VDS performs the conversion service for PIMS vendors by mapping veterinarian practice data from the PIMS' customers' computer systems, moving that data into VDS's system, then reformatting and loading it on to the PIMS.

17. Since at least 2006, VDS has been authorized to use a version of the Software (starting at least with Dataconnect 8.2) under a perpetual license purchased from Actian for Data Integrator v. 8 (the "VDS License"). VDS upgraded to Data Integrator 9.2 at some point. VDS has paid Actian separately on an annual basis for support and maintenance services. Fees were paid for each license and the license for Data Integrator v. 9.2 is fully paid up and perpetual.

18. Pursuant to the VDS License, VDS is authorized to use the Software to map data from VDS's veterinarians' computer systems, move it into VDS's system, and reconfigure the data for use with PIMS. At all times, this has been VDS's only use for the Software.

19. VDS does not allow third parties or non-parties to use the Software. VDS does not distribute "engines" for the Software.

20. There is no limitation on the hours or number of times a day the Software can be used; the Software is licensed to VDS for use on a "24/7" basis.

21. VDS has the Software on its secure storage on a network resource. Conversions of veterinary practice data are done from this resource. Some individual VDS employees have back-up copies on their laptops.

22. In 2017, Actian sent a self-audit or customer-use survey to VDS, which was completed and returned, showing that several VDS employees had been or were users and had the Software on their laptops (the "2017 Self-Audit"). The 2017 Self-Audit was used, among other things, for Actian to evaluate how VDS was using the Software and included a discussion and demonstration of how the Data Integrator was used by VDS.

23. VDS at this time was using the Software to develop some customization for use with each of its PIMS customers systems, and to do conversions for them.

24. In or around 2017, Actian promoted to VDS an upgrade for the Software, from v. 9 to a newer version. There was discussion about VDS's use of the Software, how many computers and users had the Software, as well as an exchange of other information about VDS' use and Actian's upgrade offerings. However, the newer version did not support features in v. 9 that VDS depended on in its business. VDS did not upgrade but continued to use the same Software in the same way hosted on multiple individual computers and its network resource.

25. Following the 2017 Self-Audit, VDS continued to use and store v. 9 in the same way. The number of conversions varied each year. After the 2017 Self-Audit, Actian made a further attempt to migrate VDS to its v. 11 in 2018, and in 2018 also told VDS that the v. 9 software would not be supported in the future. Nonetheless, since Actian's v. 11 of the Software had dropped features that VDS relied on in v. 9, VDS declined to migrate to a newer version of the Software.

26. On or about December 9, 2020, Actian sent a request to Covetrus' Controller that VDS perform a self-audit that would, among other things, assess VDS's use of the Software and compliance with the VDS License (the "2021 Self-Audit"). VDS complied with Actian's request and performed the 2021 Self-Audit, returning the information to Actian in January 2021.

27. The "2021 Self-Audit, like the 2017 Self-Audit, showed multiple VDS employees had back-up copies on their machines as did the 2017 Audit (or survey).

28. At no time prior to the 2021 Self-Audit did Actian complain or raise issues with the way VDS used or stored the software or the number of employees who had it on their laptops.

29. However, after receiving the 2021Self-Audit, Actian claimed that the Software could only be in two places–the network and a second machine (*e.g.,* laptop). Further, according to Actian, the Software required a separate license for each user.

30. The VDS License was/is perpetual. The service fees for support are paid annually, and have been in the low four-figures, even for "post-obsolesce support."

31. The VDS License has no provision for payment of additional amounts for use beyond the scope of the license, or for the acceptance or imposition of a different license or an additional license(s) for use or copying of the Software outside of the perpetual license. There is no obligation in any contract document that VDS purchase an "enterprise license," allowing for use by some or all members of an enterprise.

32. Nonetheless, Actian now demands millions of dollars in fees for an "enterprise license" in a "proposal to Covetrus," despite the facts that, (a) VDS had not changed the way it uses and maintains the Software within its business since at least 2017, (b) there is no agreement in writing or otherwise that obligates VDS or Covetrus to purchase or obtain an additional license for use beyond that included in the perpetual license, and (c) the maintenance and support agreement payments required each year were in the low four figures.

33. Covetrus and VDS are separately incorporated businesses and corporate formalities between them have been respected. VDS is an indirect subsidiary of Covetrus. Covetrus is not a party to the VDS License and does not use the Software. Therefore, Covetrus has no liability to Actian regarding the Software.

B. **Actian's Claims of Plaintiffs' Breach of Their License and Infringement of Actian's Copyrights**

34. The 2021 Self-Audit showed VDS used and deployed the Software on multiple machines assigned to multiple individuals, as did the 2017 Self-Audit (and as it had in 2016 for example). Given that a conversion typically makes use of the Software for a finite period of time, more than one conversion typically could be done in one day with one computer with the Software.

35. Nonetheless, Actian took a contrary position to that in 2017 and argued that by VDS having the software on multiple machines with multiple users, VDS had breached its license regardless of whether the use and frequency of use was within the parameters of what could have been done under the license.

36. Actian has demanded millions of dollars for these back-ups on multiple machines, and multiple potential users. This demand for each year from 2018 are many times the original and renewal license fees for all prior years—even though VDS's uses of the Software did not change since the 2017 Self-Audit.

37. Actian sent Covetrus and VDS a "litigation hold notice," illustrating that this is a real, immediate and actual controversy between the Parties, and that Plaintiffs are entitled to have a declaration of their rights resolved now rather than wait to be sued.

38. Actian also has sent to Covetrus documents and information relating to another lawsuit in which Actian alleged that a licensee had violated its license through overuse and prohibited uses. Actian's purpose was to threaten Plaintiffs that Actian would likewise sue them on the same basis and prevail. VDS, however, is not in a similar situation as the licensee in the prior lawsuit.

39. Actian's threats are concrete and Plaintiffs are entitled to a declaration now as to the rights of the Parties to this dispute.

## COUNT I
### (Declaratory Judgment, 28 U.S.C. § 2201, and 17 U.S.C. § 101, *et seq.*)

40. Plaintiffs repeat and re-allege the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

41. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, this Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration…."

42. There exists an actual controversy between Plaintiffs and Actian with respect to what are the terms of the VDS License.

43. Actian has alleged that the license is based on a 2008 End User License Agreement, sales contracts for annual support services, and "support terms" on its website that it has changed over time. There is no one document that embodies the entire agreement between the parties.

44. VDS contends that the support policy does not create additional obligations for VDS but rather only sets forth the benefits and services Actian commits to provide. VDS also asserts that the license must also be interpreted according to the exchanges between the parties in 2017, the course of performance and industry practice.

45. Alternatively, the VDS License is ambiguous as no one document contains the agreement and its terms have incorporated the course of performance and industry practice.

46. Actian contends that the parties' agreement requires purchase of an enterprise license for $1.5 million per year, and/or a $13 million post-obsolescence support license.

47. VDS asserts that even if it has gone beyond the terms of the perpetual license, there is no contractual requirement that it purchase an enterprise license, any other license, or any other services from Actian. VDS further asserts that the alleged imposition of an enterprise license is not within the contract nor the copyright rights of Actian (nor is the purchase of a perpetual support contract for $13 million).

48. Plaintiffs are entitled to declarations that VDS's use of the Software has been within the use thereof licensed by Actian, including declarations that:

      (i)      VDS's past use is authorized by its license.

      (ii)     VDS has not exceeded the use permitted under its license.

      (iii)    In the event VDS is found to have breached the VDS License by exceeding the scope of its permitted use, such breach is not material.

      (iv)    Covetrus is not a party to the VDS License and is not liable for any act of VDS under that license (or outside of it).

      (v)     Actian has no contract or other right to require VDS or Covetrus to purchase an enterprise license or additional license of any kind, nor does it have the right to require VDS or Covetrus to purchase a lump sum $13 million perpetual post-obsolescence support contract.

49. Plaintiffs are entitled to declarations that they have not infringed any copyright owned by Actian, including declarations that:

      (i)      VDS paid Actian for the use of the Software.

      (ii)     Any additional copying of the Software by VDS was not done to avoid payment, has not harmed Actian, and was in accord with the Parties' past application of the license.

      (iii)    VDS has not infringed any Actian copyright in any work.

      (iv)    The Software is one work under copyright law.

      (v)     If there is infringement due to unlicensed use, that infringement is a single infringement that began before 2017 and which Actian knew of by 2017.

      (v)     Covetrus is not liable for use or infringement by VDS.

      (vi)    Covetrus has not infringed any Actian copyright.

50. In the alternative, if Plaintiffs are found to have infringed any copyright held by Actian, Plaintiffs are entitled to declarations that:

(i) Plaintiffs' infringement, if any, was not willful since, among other things, VDS (a) cooperated in audits as requested by Actian; (b) provided the information to Actian voluntarily that Actian now uses against both Plaintiffs; (c) VDS has not exploited the Software beyond its intended and paid-up use; and (d) VDS has performed the VDS License as it had in the past, and as reported in 2017.

(ii) Neither VDS nor Covetrus is a willful infringer.

(iii) Actian's copyright claim is barred by the statute of limitations.

(iv) Actian has engaged in misuse of its copyrights, which makes its copyrights unenforceable as to anyone, including VDS and Covetrus, until such misuse is purged.

(vi) Actian is only entitled to one statutory damage award for this one work, or alternatively its actual damages for use of the Software in conversions.

(vii) In the alternative, Actian should be estopped from its enforcement of its copyrights against Plaintiffs based on its conduct in 2017 when it was aware of the use by VDS and that there were multiple individual and machines involved in use of the Software yet it never complained. VDS relied on Actian's cooperation in its use in continuing with v. 9 after 2017 in the same manner as at the time of the 2017 exchanges of information, including the manner of billing for support and the amounts billed for such support.

(viii) The infringement, if any, is a single act of infringement that began by 2017.

51. Plaintiffs should be awarded their attorneys' fees incurred in this action under Section 2202 of the Declaratory Judgment Act.

WHEREFORE, Plaintiffs Covetrus, Inc. and Veterinary Data Services, Inc. respectfully request that this Court enter a declaratory judgment in their favor and against Defendant Actian Corporation making the above-requested declarations and also awarding their attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

Dated: August 19, 2021            Respectfully submitted,

*/s/ Paul McDonald*
Paul McDonald/Bar No. 8626
BERNSTEIN SHUR
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5029
Telephone: (207) 774-1200
pmcdonald@bernsteinshur.com

Danielle J. Healey (*pro hac vice*)
FISH & RICHARDSON
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: (713) 654-5300
healey@fr.com

Attorneys for Plaintiffs
Covetrus, Inc. and
Veterinary Data Services, Inc.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 19, 2021, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which will send a notification of electric filing to all counsel of record who have appeared in this case.

                                           */s/ Paul McDonald*
                                           Paul McDonald