UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| COVETRUS INC., and VETERINARY )<br>DATA SERVICES, INC., )<br> )<br>    Plaintiffs and Counterclaim )<br>    Defendants, )<br> )<br>    v. )<br> )<br>ACTIAN CORPORATION, )<br> )<br>    Defendant and Counterclaim )<br>    Plaintiff. ) | No. 2:21-cv-00097-LEW |

**ORDER ON MOTION TO DISMISS**

The controversy in this case arises out of a software lease and copyright law. The Defendant, Actian Corporation, is a software company. One of its copyrighted products is Data Integrator. Plaintiffs, Covetrus, Inc. and Veterinary Data Services, Inc. ("VDS"), are related business entities. According to their Complaint (ECF No. 1), VDS – but not Covetrus – utilizes Data Integrator in its business and is party to an end user license agreement ("EULA") with Actian that authorizes it to do so.

The dispute relates to whether or not Plaintiffs violated the EULA by installing Data Integrator on more computers than authorized, allowing more individuals to utilize the software than is permitted under the EULA, and/or utilizing the software beyond the scope of the use authorized in the EULA. Plaintiffs filed suit preemptively in this Court[1] to

---

[1] Covetrus, parent of VDS, is a Maine domiciliary. Actian is domiciled in California.

request a judgment declaring that VDS has not violated Actian's copyright or breached the terms of the EULA, and that Covetrus is not a party to or liable for breach of the EULA and has no liability for copyright infringement because it is not a user of the software. In response, Actian has asserted Amended Counterclaims against both Plaintiffs for breach of the EULA and violation of Actian's copyright in the software.

The matter is before the Court on Plaintiffs' Motion for Partial Dismissal of Defendant's Amended Counterclaim (ECF No. 45). Plaintiffs argue the counterclaims do not state any claim against Covetrus and do not state a breach of contract claim against VDS. The motion papers also raise the possibility for further amendment of the counterclaims' supporting allegations; Actian requests leave to amend in the event the Court finds the allegations in the Amended Counterclaim deficient on the issue of Covetrus's liability as corporate parent to VDS. Actian's Opp'n 16-21 (ECF No. 59); Proposed Second Am. Counterclaims (ECF No. 59-2).

## BACKGROUND

The introduction to this order sufficiently outlines the relevant facts for decision, except for the adequacy of Actian's allegations that Covetrus is a proper counter-defendant. On that issue, Actian's Amended Counterclaim (ECF No. 37) states as follows:

> 5. Actian is informed and believes, and on that basis alleges, that at all relevant times, each of the Counter-Defendants was, and is, the agent, servant and/or employee of each of the other [Counter] Defendants, and that all of the things alleged to have been done by each [Counter] Defendant were done in the capacity of and as agent of the other [Counter] Defendants.
>
> 6. Actian is informed and believes, and on that basis alleges that Counter-Defendants were each acting as the agents of each other are alter egos and are, therefore, jointly and severally liable for the counterclaims asserted by Actian.

In addition to these essentially conclusory allegations, Actian alleges that both Counter-Defendants used the software outside the scope of the use authorized in the EULA. Amended Counterclaim ¶¶ 26-27, 44, 51.

In its proposed Second Amended Counterclaim (ECF No. 59-2), Actian expands its allegations concerning Covetrus's participation in matters giving rise to the litigation. The expanded allegations are as follows:

> 7. There has existed and currently exists substantial continuing involvement by Covetrus specifically with respect to the infringing activity of VDS. Additionally, there has been inadequate observance of corporate formalities between Covetrus and VDS, inadequate maintenance of separate accounting systems on the part of VDS, Covetrus is exercising complete authority over the daily operations of VDS, and Covetrus has a high degree of control over the general policy and administration of the VDS. Facts evidencing the foregoing include but are not limited to all of the following:
>
>     A. Covetrus took responsibility to pay for the Actian Software. For example, Exhibit B hereto is a Sales Order directing Actian to send VDS bills to a Maine address that is identical to that of plaintiff Covetrus, as admitted by Plaintiffs in their First Amended Complaint, ¶ 7 (alleging that "Covetrus is a Delaware Corporation with its headquarters located at 7 Custom House Street, Portland, Maine 04101.")
>
>     B. Covetrus employees were directly, substantially and continuously involved in the process of negotiating for the procurement of software to be ostensibly used by VDS, and likely Covetrus as well, and such Covetrus employees that were in essence running VDS' operations include but are not limited to: …
>
>     C. As of on or about February 27, 2021, prior to the filing of this lawsuit, there were no VDS employees involved in Plaintiffs' discussions with Actian relating to VDS and Covetrus' wrongful use of the Software, and all such discussions were being handled solely by Covetrus employees, or individuals with "covetrus.com" email addresses and who represented themselves to be employees of Covetrus, Inc.;
>
>     D. VDS employees who were formerly involved with interactions with Actian, including but not limited to Chauncey Fannin and Josh Johnson, have quit VDS, been fired by VDS, or are otherwise no longer working for VDS,

and their job responsibilities have been transferred to Covetrus employees including but not limited to those Covetrus employees named above;

E. In or about December 2020 – January 2021, when Actian sent a self-audit form to VDS, the self-audit form response by VDS to Actian was managed and handled by Covetrus employee Kristen Parisien …, rather than an employee at VDS;

F. At least some employees of Covetrus also have email addresses of VDS …;

G. In its annual reports, e.g., 2020 10K p. 63, Covetrus represents to investors that it provides "data integrations" including "data conversions," which is the same service that VDS claims to be providing using Actian's DataConnect software;

H. Covetrus' then-Chief Commercial Officer Todd Haedrich represented to third parties, e.g., on or about March 12, 2021, that "Covetrus, Inc." is the "successor-in- interest to Veterinary Data Services, Inc.," and referred such third parties who had previously interacted directly with VDS, to interact with Covetrus employees, including Covetrus' Senior Director of Product Management Rocco Toppi, Covetrus' EVP & President Georgia Wraight, and Covetrus' Vice President, Digital & B2B eCommerce Delivery Sal Shaikh;

I. By and through its counsel, Covetrus represented on or about October 1, 2021 that there is "nothing to inspect" in VDS's physical office location in Lexington Kentucky, and has represented that the VDS office in Kentucky is an "empty office";

J. VDS's "Meet the Team" website lists employees who represent to the public that they are employees of "Covetrus," including but not limited to …;

K. Covetrus has posted jobs and is actively recruiting for employees to work in the Lexington, KY area where VDS claims to be located, indicating that VDS' operations are in fact being managed by none other than Covetrus;

L. VDS has few or no employees that work in the areas of legal, finance, or business operations, indicating that Covetrus is in fact controlling and managing the business operations of VDS;

M. Covetrus has represented through counsel that Covetrus employees will testify on behalf of VDS in a corporate capacity, and VDS has not

identified any employees who will testify in a corporate capacity on behalf of VDS;

N. VDS' website at vetdata.com represents that Covetrus products are their own, stating, e.g., "We Build the Tools for the Vet Industry," referencing a product called "Covetrus Connect Marketplace"; and

O. Covetrus, a public company, has represented to its investors that it was "very important" for investors to understand that, from "day 1," the Company had "brought together these different business groups into a single face to customer" (including VDS), and that they were no longer operating as "standalone legacy businesses," and that Covetrus had "achieved a deep integration" in the Company's core operations critical to its financial health, and that they had "brought our… 3 various sales organizations … together into a now tightly integrated, stood-up, aligned group that's now representing the total scope of our capabilities," and further that because of such "deep integration" of software and sales forces (including VDS), Covetrus already had rising sales in the second quarter of 2019 ("Q2 2019") and was outpacing the competition as it was in "share-gaining mode in the market."

## DISCUSSION

### A. Timeliness

Before turning to Covetrus's and VDS's arguments for dismissal, Actian says their Motion tp Dismiss should be denied as untimely. Actian filed its Amended Counterclaim on September 1, 2021 (see ECF No. 37). Covetrus and VDS did not file their Motion to Dismiss until September 22, 2021 (see ECF No. 45). Rule 15(a)(3) allows for a response to an amended pleading to be filed within the timeframe for responding to the original pleading or 14 days after service of the amended pleading, whichever is later, unless the court orders otherwise. Covetrus and VDS missed the deadline by six days. Ordinarily, a late filing must be introduced by a motion for leave to file. Covetrus and VDS omitted a motion for leave to file.

Despite the shortcomings outlined above, I overrule the tardiness objection. The docket reflects that the parties have repeatedly extended the scheduling order's deadlines and I see no basis for crying foul under the circumstances, especially where the deadline was missed by a mere six days.

### B. Merits

Actian alleges in its Amended Counterclaim that its breach of contract and copyright claims are based in substantial part[2] on version 9 of its Data Integrator software, purchased by VDS in January 2020, and that the EULA associated with version 9 defines the scope of the license to use version 9. Am. Counterclaim ¶¶ 10-13, 18. Covetrus and VDS argue the allegations are insufficient to state anything more than a copyright claim against VDS and they request the dismissal of the entire Amended Counterclaim against Covetrus and the breach of contract counterclaim against VDS.

A motion to dismiss tests the adequacy of a pleading's allegations. Fed. R. Civ. P. 12. In this instance, the test is whether the allegations in Actian's Amended Counterclaim (ECF No. 37) state plausible counterclaims against Covetrus and a plausible contract counterclaim against VDS. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017). If they do, Actian is content proceeding on its Amended Counterclaim. If they do not, Actian seeks leave to amend so that it can proceed on its proposed Second Amended Counterclaim. The Second Amended Counterclaim is designed, specifically, to keep Covetrus as a counterclaim

---

[2] VDS obtained a license to one or more earlier versions of the software. Whether those earlier versions support or undermine the claims or counterclaims is an issue, but it is not an issue demanding resolution at the pleading stage.

6

defendant. I begin with the breach of contract claim before considering whether the allegations make Covetrus a proper counterclaim defendant.

1. *Breach of contract*

VDS and Covetrus observe that the EULA states that the license it grants is terminated upon any breach of the EULA's terms, without specifying other remedies. Mot. 7. Based on the termination provision, VDS reasons that the very first time it allegedly engaged in unauthorized use of the software the license immediately terminated, and consequently Actian's "recovery for any alleged unauthorized use by Covetrus [sic] after the first breach is limited to retaining the paid-up royalty and other past payments, and recovery based on copyright infringement." *Id.* Based on this logic, VDS argues the breach of contract claim should be dismissed for lack of an available damages remedy. *Id.* at 7-8.

The EULA for version 9 states that Texas law governs its terms. Under Texas law, "[d]amages are an essential element of a breach of contract claim." *Miner Dederick Const., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 463 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The question is whether, under Texas law, a EULA with such a termination provision can support an award of damages based on unpaid licensing fees. If Covetrus and VDS are correct, it would suggest that Texas affords no common law remedy to a software designer for breach of a EULA in the absence of federal copyright law. That strikes me as a doubtful proposition.

Actian requests contract-based damages in its pleadings. For purposes of a motion to dismiss, that strikes me as enough to state a claim for damages in this particular scenario, at least in the absence of an on-point, Texas authority to the contrary. VDS and Covetrus

have not cited authority on that narrow issue, and I see no reason why I should resolve the issue at the pleading stage since, practically speaking, it will do nothing to reduce the factual scope or complexity of this case moving forward.[3] Furthermore, Texas law is consistent with other jurisdictions in allowing persons harmed by a breach of contract to recover, inter alia, expectation damages, "the amount necessary to place [the plaintiff] in the position it would have occupied if the contract had been performed," *Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 831 (Tex. App. 2017), or restitution damages, which "restore to the plaintiff a benefit that it had conferred on the defendant," *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 193 (Tex. 2020). The question, it seems, is whether the parties contemplated that there would be a fee associated with graduated license rights. For purposes of a motion to dismiss, an inference to that effect is plausible. So too is the inference that a software vender experiences a pecuniary loss measured by the licensing fees a user should have paid for greater-than-licensed use of the software. *See, e.g., Med. Coll. of Wisconsin Inc. v. Attachmate Corp.*, No. 15-CV-151-JPS, 2016 WL 697145, at *16 (E.D. Wis. Feb. 19, 2016) (finding that plaintiff was entitled to lost license fees resulting from breach). Because liability in damages based on unpaid licensing fees appears to be one plausible outcome for the contract counterclaim, the request to dismiss due to the supposed unavailability of damages is denied.

 2. *Covetrus*

Actian alleges that Covetrus and VDS are integrated enterprises that serve as the

---

[3] Covetrus and VDS say it would simplify future proceedings, but they do not elaborate. Reply 4 (ECF No. 62).

mutual agents of one another and/or are alter egos, and consequently they share liability to Actian for breach of the EULA and copyright violations. Am. Counterclaim ¶¶ 5-6. Covetrus argues the allegations of integration and alter ego status are too conclusory or plain vanilla to extend these counterclaims to Covetrus, which was never named a party to a EULA for Data Integrator.[4] Mot. 3, 5. Covetrus cites precedent holding that a disclosed agent is not liable for contracts executed on behalf of a principal and that a non-signatory to a contract is not considered a party to the contract. *Id.* at 3 n.2, 5. Here, however, the alter ego allegations assert more than a one-way agency relationship. Plaintiffs also cite precedent stating that a parent is not liable for copyright infringement carried out by its subsidiary, simply by dint of parenthood status. *Id.* at 6. Again, the allegations suggest a role for Covetrus beyond mere ownership of VDS, although that role is merely labeled in conclusory fashion in the Amended Counterclaim.

That brings us to Actian's proposed Second Amended Counterclaim, through which Actian offers to amplify its factual pleadings on the co-agency/alter-ego/participation score. My reading of the proposed second amended pleading supports a plausible finding of shared liability, such that Covetrus could be liable, depending on the evidence, for participation in the events giving rise to this litigation, even if the evidence would not support piercing the corporate veil for all purposes. For example, a corporate parent can be liable for "direct participation" in transaction-specific conduct that produces breaches of

---

[4] Covetrus also notes that it was organized in 2019 and argues this fact means it could not be party to a relevant contract with Actian. Mot. 5 n.3. However, Covetrus's 2019 organization is not a sufficient ground for dismissal of the counterclaims. According to the pleadings, VDS purchased version 9 of the software in January 2020, after Covetrus's initial organization.

9

the EULA and/or copyright violations. *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 756 (7th Cir. 1989) (citing *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (Hand, J.)). *See also Pearson v. Component Tech. Corp.,* 247 F.3d 471, 487 (3d Cir. 2001) (citing *Esmark* and describing a "a kind of 'transaction-specific' alter ego theory"); *Two-Way Media LLC v. Akamai Techs., Inc.*, No. CV-CC-8-116, 2009 WL 10697544 (S.D. Tex. Jan. 24, 2009) (applying federal law, but in conformity with common law principles). *See also cf. United States v. Kayser-Roth Corp.*, 272 F.3d 89, 102 (1st Cir. 2001) (involving roughly analogous discussion of "operator liability" for parent corporation involved in subsidiary's CERCLA violations).

Actian needs to allege facts sufficient to support a finding that Covetrus plausibly is liable for the alleged breaches of the EULA and violations of copyright law. For the contract claim, this requires allegations sufficient to support an inference of liability under Texas law; for the copyright claims, federal law will set the bar. However, under either Texas law or this Circuit's federal law, presumably such theories of liability are cognizable, though neither party has assisted the Court in nailing the issue down definitively. Ultimately, regardless of which law applies, "[e]valuating whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679).

Given that the request for leave to amend is not the product of undue delay or bad faith and would not result in undue prejudice, it should be granted "freely" when "justice so requires," Fed. R. Civ. P. 15(a), unless the proposed amendment would be futile.

*Foeman v. Davis*, 371 U.S. 178, 182 (1962). Futility, in this context, means that the amended pleading would still fail to state a plausible claim. *Boston & Me. Corp. v. Hampton*, 987 F.2d 855, 868 (1st Cir. 1993).

My judicial experience and common sense point me in the direction of freely granting Actian leave to proceed on its proposed Second Amended Counterclaim and, based on that pleading, to deny Covetrus's request to be relieved of counter-defendant status. Viewing the facts alleged in the Second Amended Counterclaim in the light most favorable to Actian, and granting Actian the benefit of all reasonable inferences that arise from the allegations, *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011), Actian has stated a plausible basis for relief against Covetrus. Although the bar is set high when it comes to disregarding separate corporate status, and although my analysis may rely heavily on inferences, if Covetrus is, as alleged, running the show at VDS, simultaneously promoting in its own name the same services that VDS supplies, and controlling contractual decisions about which rights to license and pay to support the provision of said services, it is plausible that Actian may be entitled to relief from Covetrus as well as VDS. For purposes of a motion to dismiss, these recitals are more than "threadbare," and they raise the possibility of relief above the "speculative" or "merely conceivable" level. *Id.* at 12. Accordingly, Actian's alternative response to the Motion – its request for leave to file the proposed Second Amended Counterclaim – is granted. Based on my review of the expanded allegations found therein, specifically paragraphs 7 and 7A through 7O, Covetrus's request that it be dismissed as a counterclaim defendant based on its separate corporate status is denied.

## CONCLUSION

For the reasons set forth above, the Motion for Partial Dismissal of Defendant's Amended Counterclaim (ECF No. 45) is DENIED and Actian's motion in the alternative for leave to file the proposed Second Amended Counterclaim (*see* ECF No. 59) is GRANTED. Actian will file the Second Amended Counterclaim within fourteen (14) days of this Order.

**SO ORDERED.**

Dated this 20th day of January, 2021.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE
