UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| COVETRUS, INC. and | ) | |
| VETERINARY DATA SERVICES, INC., | ) | |
| | ) | |
| Plaintiffs | ) | CASE NO. 2:21-cv-00097-LEW |
| | ) | |
| v. | ) | |
| | ) | |
| ACTIAN CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFFS' MOTION TO REFER UNDER SECTION 17 U.S.C. § 411(B)(2)
PURSUANT TO THE COURT'S DECEMBER 2, 2022 ORDER**

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL POSTURE OF THE CASE ...................................................... 2

III.    THE 411(B) SAFE HARBOR DOES NOT APPLY IF THE INACCURACIES WERE "KNOWING" ....................................................................................................... 4

IV.     FACTUAL BACKGROUND ............................................................................... 6

    A.      Actian's Basic Registrations ................................................................... 6

    B.      Actian's Supplementary Registrations ..................................................... 9

V.      LEGAL STANDARD ........................................................................................ 11

VI.     ARGUMENT ..................................................................................................... 12

    A.      Actian Knowingly Claimed Previously Published Code to Enhance Its Copyright Infringement Claims ................................................................ 13

    B.      The Deposits Still Violate Copyright Requirements and Do Not Match the Works Claimed in the Supplementary or Basic Registrations ........................................ 16

    C.      Referral to the Copyright Office Now Is in the Interest of Efficiency ................. 19

VII.    CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acme Precision Products, Inc. v. American Alloys Corp.*,
  422 F.2d 1395 (8th Cir. 1970) ................................................................4

*Brazos River Auth. v. GE Ionics, Inc.*,
  469 F.3d 416 (5th Cir. 2006) ................................................................4

*HealtheState, LLC v. United States*,
  No. 1:18-cv-34C (Fed. Cl. June 28, 2022), Dkt. 187 ............................19

*King-Devick Test Inc. v. NYU Langone Hosps.*,
  No. 17-CV-9307-JPO, 2019 WL 3071935 (S.D.N.Y. July 15, 2019) .....................19

*Lieb v. Korangy Publishing, Inc.*,
  2022 WL 1124850 (E.D.N.Y. 2022) .............................................. *passim*

*Longhorn Locker Co., LLC v. Hollman, Inc.*,
  No. 3:19-cv-02872-K (N.D. Tex. May 18, 2021), Dkt. 268 ....................19

*McGahey v. Fed'l Nat'l Mortgage Assoc.*,
  2018 WL 3521175 (D. Me. July 20, 2018) ...............................................4

*Media.net Adver. FZ-LLC v. NetSeer, Inc.*,
  156 F. Supp. 3d 1052 (N.D. Cal. 2016) ................................................6

*Metropolitan Regional Info. Sys, Inc. v. Am. Home Realty Network, Inc.*,
  888 F. Supp. 2d 691 (D. Md. 2012) ........................................................6

*Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*,
  No. 2:20-CV-11181, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023) .............5, 14, 15

*Palmer/Kane LLC v. Rosen Book Works LLC*,
  188 F. Supp. 3d 347 (S.D.N.Y. 2016) ..................................................11

*Unicolors, Inc. v. H& N Hennes & Mauritz, L.P.*,
  142 S. Ct. 941 (2022) ...............................................................4, 11, 12

**Statutes**

17 U.S.C. § 408(a) ...............................................................................17

17 U.S.C. § 408(d) ..............................................................................1, 9

17 U.S.C. § 410(c) ...................................................................................................16

17 U.S.C. § 411(a) .....................................................................................................9

17 U.S.C. § 411(b)(2) ........................................................................................ *passim*

**Other Authorities**

37 C.F.R. § 201.7(c)(4)(v) .......................................................................................18

37 C.F.R. § 202.3(c)(3)(iii) ......................................................................................10

37 C.F.R. § 202.6(d)(4)(ii) .......................................................................................10

37 C.F.R. § 202.6(f)(2) ..............................................................................................9

37 C.F.R. § 202.20(c)(2)(vii)(A)(2) ...........................................................................7

37 C.F.R. § 205.14 ...................................................................................................18

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
    (3d ed. 2021) ................................................................................................ *passim*

Plaintiffs and Counterclaim-Defendants Covetrus, Inc. ("Covetrus") and Veterinary Data Services, Inc. ("VDS") move this Court to request the Register of Copyrights give the required advisory opinion on whether the two Basic and two Supplementary Copyright Registrations would have been registered if the Register was aware Actian knowingly submitted inaccurate information in its original basic and later supplementary applications. 17 U.S.C. § 411(b)(2).

## I.    Introduction

This is a copyright infringement and breach of license case over Actian's database conversion tool known as DataIntegrator or DI (the "Software").   In the course of this lawsuit, it has become clear that Actian knowingly submitted inaccurate information to obtain the Basic Copyright Registrations on which its counterclaims are based.   *See* Dkt. 170 ("4/11 Mot. to Refer").   Just before the close of discovery, Actian filed for Supplementary Registrations, ostensibly to correct information in the Basic Registrations.

Actian did not withdraw the Basic Registrations, however, which means the Supplementary Registrations co-exist with them in the Copyright Offices' records, but do not supersede or cancel them. 17 U.S.C. § 408(d).[1]   At a fundamental level, the two sets of registrations conflict on the highly material points of the scope of the claimed copyright, characterization of the deposit, and whether the code should be treated as unpublished or published for registration and enforcement purposes.   As a result, there are now two sets of conflicting registrations "live" at the Copyright Office and in this case.

Actian claims the inaccuracies in the registrations were not intentional or fraudulent, and

---

[1] "Supplementary registration does not cancel or replace the original registration or the registration number.  Nor does it change or remove the information contained in the original registration.  Instead, supplementary registration adds information to the public record, and it augments—but does not supersede—the information in the original registration.  The Office will issue a new certificate and registration number for the supplementary registration, and the original and supplementary registrations will be linked in the Office's public catalog." Circular 8, p. 1, https://www.copyright.gov/circs/circ08.pdf

fall under the 'safe harbor' in Section 411(b)(2).  However, this is the wrong standard.  The safe harbor does not apply if Actian had knowledge that the information it submitted to the Copyright Office was inaccurate.  Because Actian had knowledge about its own computer programs and had created its own source code deposits when it filed each of the applications, the safe harbor does not apply.

Moreover, separately, the source code deposits do not satisfy the clear requirements set by the Copyright Office for computer programs.  Actian knowingly submitted inaccurate information about the source code deposits to the Copyright Office and the Supplementary Registrations cannot cure those problems.  Further, since the deposit is the copyrighted material itself, the content of the deposit is highly material and there is no safe harbor.

At bottom, Actian tried to push its claim to copyrights too far, and failed to correct its over-reach in the Supplementary Registrations.  Actian has also held on to its faulty Basic Registrations.  Resolution of the validity of the conflicting sets of registrations, as well as the deposits, is necessary for the case to proceed in an orderly manner.[2]  Referral to the Registrar now is the most efficient way forward.

## II.   Procedural Posture of the Case

Actian alleges in its Second Amended Counterclaims the unlicensed use by Plaintiffs of DataConnect, Version 9.2.7.12 also referred to as Data Integrator, or DI (the "Software"), resulting in infringement of the copyright of the text of its source code subject to Registered Copyrights TX0008902355 for DI 9.x Engine and TX0008902344 for DI 9.x UI (together, the "Basic

---

[2] Among other things, in addition to the merits, it is noteworthy that the basis for subject matter jurisdiction is the federal copyright dispute.  The Court's supplemental jurisdiction was invoked over the state law claims since there is no diversity among the parties – both Actian and Covetrus are Delaware corporations.

Registrations").[3]   SoF at ¶1; *see also* Dkt. 91 to 91-8. Actian has alleged claims for copyright infringement and breach of contract based on the alleged unlicensed use and its basic registrations. SoF at ¶1; *see also* Dkt. 91.  On April 11, 2022, Plaintiffs filed a motion to refer validity issues in the basic copyrights to the Register of Copyrights for an advisory opinion.  Dkt. 114.

Discovery closed on July 1, 2022, but that evening, Actian produced the supplementary registrations for each of the UI and Engine computer programs, ostensibly to correct and amplify the information in the challenged basic registrations.  Dkt. 164 at p. 2.   The issued supplementary registrations are not mentioned in the pleadings, any depositions, any expert report, or any written discovery or production of documents prior to July 1, 2022.

On August 5, 2022, Plaintiffs filed a Motion to Exclude Defendant's New Supplementary Registrations or Refer Validity Questions to the Register of Copyrights Questions Pursuant to 17 U.S.C. § 411(b)(2).  Dkt. 162.  On August 24, 2022, the Court ordered all motions and briefs regarding the motions to refer (Dkt. 114, 162) to be refiled by September 30, 2022 under the Court's rules for sealing papers.  Dkt. 163.  On August 31, 2022, Plaintiffs filed a Motion to Stay (Dkt. 167) as per the Court's August 24, 2022 Order, Dkt. 163 at 5.  As a result, the deadlines for motions for summary judgment and for *Daubert* motions were temporarily stayed by operation of the Court's August 24, 2022 Order.  *Id*.  On September 30, 2022, the motions to refer and briefs were refiled by the parties.  Dkts. 170 to 174-9.

On December 5, 2022, the Court issued an order finding moot the motion to stay (Dkt. 167), denying the motion to exclude (Dkt. 162), denying the motions to refer without prejudice

---

[3] Actian has nothing in its original or amended complaints about its supplementary copyright registrations.  Actian's Second Amended Counterclaims allege claims for breach of contract, theories of vicarious liability against Covetrus for Actian's claims against its subsidiary VDS, and infringement of copyrights on later versions of the software, 10.6 and 11.6. (these copyrights are alleged to be subject to infringement because pre-existing files in 9.2.7.12 are also in those programs, but the same text of source code can only be subject to one copyright).

(Dkts. 114, 167), and ordering a new motion to refer to be re-filed using the form of Local Rule 56.  Dkt. 184 at 6, 9-10.  Thereafter, the schedule for the motions was referred to the Magistrate Judge, who ruled the motion to refer and any *Daubert* motions necessary to the motion to refer would be handled first, and the other motions deferred pending their disposition.  Dkt. 193.

## III.    The 411(b) Safe Harbor Does Not Apply if The Inaccuracies Were "Knowing"

Actian has taken the position that referral is not necessary because regardless of inaccuracies in its registration applications, it did not have the requisite scienter, fraudulent intent. Dkt. 173 at 4, 9-11 (arguing that Actian's mistakes were inadvertent and that "intent-to-defraud" is required); Dkt. 164 at 9 (arguing that "predicate intent" is required); *cf.* Dkt. 191 (acknowledging that "knowing misrepresentation" is what is required).  This argument misses the point because fraudulent intent is not required to invalidate a copyright registration, only knowledge.  *Unicolors, Inc. v. H& N Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 948 (2022) ("had Congress intended a scienter requirement other than actual knowledge, it would have said so explicitly.")

As an initial matter, Actian is a corporation and it cannot disavow its corporate knowledge in its own records and known by its responsible employees.[4]  Plaintiffs' source for the facts in this motion and its prior motions came from Actian's documents, its interrogatory answers based on its corporate knowledge, and the testimony of the corporation through its 30(b)(6) designees.  The factual record shows, and Actian cannot deny, that in September 2020, when it was applying for its basic registrations, Actian held corporate knowledge about whether its own code was completed, unpublished, or contained third party code. In fact, the deposits in the Copyright Office

---

[4] *See McGahey v. Fed'l Nat'l Mortgage Assoc.*, 2018 WL 3521175 (D. Me. July 20, 2018) (recognizing that a Rule 30(b)(6) designee testifies about "information known" to the organization"); *see also Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006) (explaining that a Rule 30(b)(6) witness "testifies 'vicariously,' for the corporation, as to its knowledge and perceptions") and *Acme Precision Products, Inc. v. American Alloys Corp.*, 422 F.2d 1395 (8th Cir. 1970) (Knowledge of officers and key employees of corporation, obtained while acting in course of their employment and within scope of their authority, is imputed to the corporation itself).

show the dates of the code and, beneath redactions that Actian made, the inclusion of third-party code.

The documents accompanying the registration applications produced by Actian show that its attorneys actually filed the materials on its behalf—this is relevant to knowledge, and their knowledge is likewise part of Actian's knowledge. *See Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-CV-11181, 2023 WL 115558, at * 10-11 (C.D. Cal. Jan. 4, 2023) (retention of counsel is relevant to knowledge).

Further, in the course of its Basic Registrations, Actian had detailed communications with the examiner about discrepancies in the deposit. SoF at ¶¶8–12.  *See Neman Bros.*, 2023 WL 115558 at *10 (prior "contact with the Copyright Office" is relevant to knowledge).  By the time of the Supplementary Registrations, Actian also had the benefit of the detailed briefing on the motion to refer (Dkt. 170), depositions of its own corporate representatives, and Plaintiffs' expert reports and depositions.  *See, e.g.,* SoF at ¶¶16–23, 51–53, 56–61.

Putting aside any other evidence of intent, Actian's "errors" in the facts or the law in the basic or supplementary registrations and its deposits, amount to at least willful blindness. *See Lieb v. Korangy Publishing, Inc.*, 2022 WL 1124850 at * 12-13 (E.D.N.Y. 2022).  In *Lieb,* the Court considered the same resources that Plaintiffs refer to here, including the form instructions, relevant Compendium provisions, and the existence of the U.S. Copyright's Office many avenues of supplying assistance to registrants. *Id.*  On this basis, the Court concluded that "the clarity of these resources, coupled with the simplicity of the information that Lieb was asked to provide, makes this a case where only willful blindness to the law can explain the inaccuracy at issue." *Id.* at *14.; *see also Neman Bros.*, 2023 WL 115558, at * 10-11 (finding that registrant knowingly submitted inaccurate information where Copyright Office "provided the clearest of directions" and offered

support, registrant had been in contact with the Copyright Office, and registrant had the benefit of counsel).

## IV.   FACTUAL BACKGROUND

The relevant facts are set forth in detail in the accompanying Plaintiffs' Local Rule 56(b) Statement of Material Facts ("SoF"), pursuant to the Court's December 5, 2022 Order (Dkt. 184).  Plaintiffs provide below a synopsis of the most salient facts.

### A.   Actian's Basic Registrations

Actian's Second Amended Counterclaims allege infringement of Version 9.2.7.10 of the Software and assert the Basic Registrations for Version "9.x."[5]  Actian filed the applications for the Basic Registrations on September 28, 2020.[6]  Copyright applications to register a computer program must be submitted with a "deposit" consisting of "'one copy of identifying portions' for the specific version of the program that the applicant intends to register."  U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1509.1(F) (3d ed. 2021)[7] (quoting 37 C.F.R. § 202.20(c)(2)(vii)).  Actian submitted a deposit for each application, but inconsistencies between each deposit and application led the Copyright Office Examiner to inquire whether Actian submitted inaccurate deposits.[8]  On October 1, 2020, in two emails to Actian's counsel, the Examiner stated with respect to both applications that it was "unclear whether we received source code from the correct computer program."[9]  As to DI 9.x Engine, the Examiner noted the deposit: (1) "contains copyright notices with the dates (C) 1996–2001 and (C) 2002"; (2) contains the name

---

[5] SoF at ¶1.
[6] SoF at ¶15.
[7] Courts routinely afford the Compendium deference and adopt the Copyright Office's interpretations of copyright law where reasonable and persuasive. *Media.net Adver. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1061, 1064–66 (N.D. Cal. 2016) (citing cases); *Metropolitan Regional Info. Sys, Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 706–07 (D. Md. 2012) (deferring to the Compendium concerning registration requirements).  It is publicly available at https://www.copyright.gov/comp3/.
[8] SoF at ¶¶8–12.
[9] SoF at ¶¶8–12.

"Data Junction Corp."; (3) and states "THIS IS UNPUBLISHED PROPRIETARY SOFTWARE CODE"—all of which he found "at odds" with Actian's "assertion that [it] want[s] to register a published 2007 program authored by Pervasive Software, Inc. and owned by Actian Corporation."[10]   The examiner noted similar issues with the deposit for DI 9.x UI, namely "copyright notices with dates preceding 2007 and name other . . . authors and copyright claimants," such as Pervasive, and a statement that the code was "UNPUBLISHED"—all of which was "at odds" with Actian's application.[11]

In response to these inquiries, Actian submitted a new, but still defective deposit.[12]   Actian even redacted various references to inconsistent author and/or date information from key parts of the code[13] before confirming in writing to the Examiner on October 8, 2020 "that the code now submitted contains new material published in November 2007."[14]   Taking Actian's statement at face value, as is the Office's practice,[15] the Examiner was unaware that Actian's deposit included third-party code with redactions (Sun's Java code) and still failed to meet other requirements for a source code deposit.

Ms. Van Dyken, who has worked for Actian and its predecessor companies on the Software for over twenty years, was Actian's 30(b)(6) d designee on the copyright deposits.[16]   She testified that she provided the code used in the deposits, testified that the registered Version "9.x" is ***not*** Version 9.2.7 (the version VDS is alleged to infringe) but rather Version ***9.3.0***, which was "***[n]ever***

---

[10] SoF at ¶¶9–10.

[11] SoF at ¶¶11–12.

[12] SoF at ¶44–55.

[13] As discussed below, this was a misuse of the rules that permit the redaction of trade secrets. 37 C.F.R. § 202.20(c)(2)(vii)(A)(2).

[14] SoF at ¶14.

[15] COMPENDIUM (THIRD) § 602.4(C) ("Ordinarily, the Office does not conduct investigations or make findings of fact to confirm the truth of any statement made in an application . . . .").

[16] SoF at ¶16.

*released publicly*."[17]  To create the deposits for both applications, Ms. Van Dyken checked out the

9.3 branch of the source code repository for DI—without distinguishing between files originating

for the 9.3 branch and files that originated in earlier branches, such as the 9.2 branch.[18]  She then

wrote a program to pull all the file names regardless of their directory, filtered out non-code, sorted

the files alphabetically from A to Z, and chose whatever came up in the first 25 pages and the last

25 pages of code to create the deposit PDFs (after which redactions were added).[19]  Ms. Van Dyken

later clarified that, after she was informed that the initial deposits she created would not work for

the copyright applications, she refined her initial search by doing keyword searches for a 2007

copyright date in the code – but also "added some 2006" because she "believe[s] there wasn't

enough in the 2007."[20]

On April 11, 2022, Plaintiffs filed a Motion to Refer Pursuant to 17 U.S.C. § 411(b)(2)

(Dkt. 170) requesting that the Court obtain the Register's opinion concerning the materiality of the

inaccuracies in Actian's Basic Registrations, including the deposits.  The Basic Registrations

contained at least the following inaccuracies: (1) Actian falsely represented that the 9.x Engine

deposit reflected new material it owned when it included hundreds of lines of third party Sun's

Java code, which Actian did not disclose or exclude from its copyright claim as required; (2) Actian

claimed that both "9.x" works were first published on November 30, 2007, even though the

deposits were assembled from a never-released Version 9.3; (3) Actian claimed that both works

---

[17] SoF at ¶¶ 17-18.

[18] SoF at ¶21.  While reviewing the copyright deposits for DI 9.x UI and DI 9.x Engine, Ms. Van Dyken confirmed the deposit for 9.x UI reflects pages of code from the 9.3 source tree and that the deposit for 9.x Engine was created using the same method. SoF at ¶20.

[19] SoF at ¶22.  When asked how she determined what to exclude from the source files used to assemble the deposits, she responded that she applied "[p]ure knowledge of the product."  Dkt. 174-7 (Van Dyken Tr.) at 73:13–14.

[20] SoF at ¶23.  Of course, if anyone acting at or on behalf of Actian did not otherwise know, a quick look at Copyright.gov would have shown when a program is less than 50 pages, the applicant is to simply submit the entire program.  Again, this is at a minimum willful blindness.

were completed in 2007, even though the deposits contain code associated with dates long after 2007; (4) neither the 9.x Engine nor 9.x UI deposit is representative of a single "9.x" version of DI but instead contains *multiple* works, including previously published and/or previously registered versions of the program, and code inconsistent with the underlying program, such as blocks of duplicated code; and (5) in addition to the above issues with the deposits, Actian redacted non-trade secret material, including the third party Sun programmer's name and version date stamp from the 9.x Engine deposit, which hid the presence of third party code from the examiner. Actian opposed the 4/11 Motion but failed to explain the reasons for the inaccuracies. *See generally* Dkt. 173 ("Opp. to 4/11 Mot."). The information in the Basic Registrations indicates that Actian intended to register v. 9.0, which it claimed was first published in 2007,[21] but Actian's corporate representative testified that the deposits were selected from v. 9.3.0.9 code, which was *never published*, and dates from within the deposits themselves show that the deposits contained code authored years after 2007.[22]

### B.  Actian's Supplementary Registrations

Recognizing the flaws in its Basic Registrations (and thus its infringement claim),[23] Actian sought to fix errors in its Basic Registrations by filing for the Supplementary Registrations.[24] Applications for supplementary registrations may be filed "to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d). A supplementary registration does not replace or supersede a basic registration. *Id.*; 37 C.F.R. § 202.6(f)(2); U.S. Copyright Office, Circular 8 at 1. Rather, both the basic and supplementary

---

[21] Dkt. 170 (4/11 Mot.) at 15–16 and footnotes cited therein.

[22] Dkt. 170 (4/11 Mot.) at 6–7 and footnotes cited therein.

[23] 17 U.S.C. § 411(a) (requiring valid registration before a civil action for infringement may be instituted).

[24] SoF at ¶24.

registrations coexist in the Copyright Office. COMPENDIUM (THIRD) § 1802. Notably, a supplementary registration cannot be used "to correct an error in the deposit copy(ies) . . ." submitted with the application for basic registration. COMPENDIUM (THIRD) § 1802.7(D); 37 C.F.R. § 202.6(d)(4)(ii) (supplementary registrations are not appropriate "to reflect changes in the content of a work").[25]

In both Supplementary Registrations, Actian: (1) changed the version number in the Title of the Works from "9.x" to "9.3.0.9"; (2) changed the publication status from published to unpublished; (3) removed the Date of 1st Publication; and (4) changed the Year of Completion from 2007 to 2013.[26] The Supplementary Registrations also purported to "amplify" the sections on Limitation of Copyright Claim, which is where applicants are required to exclude unclaimable material and identify the new material included in the claim.[27] Where the Basic Registrations previously excluded, vaguely, "computer program," Actian now specified in the Supplementary Registrations that the only portions of its computer programs excluded from its copyright claims were "third party code."[28] . Further, in its explanation for the changes, Actian stated the program was created between 2007 and 2013, notwithstanding the 2006 code included in the deposit was not excluded from the copyright claimed.[29] The Copyright Office took Actian's statements in its supplementary applications at face value, as is the Office's practice.[30]

---

[25] *See also* U.S. Copyright Office, Circular 8 at 3, available at https://www.copyright.gov/circs/circ08.pdf (supplementary registration cannot be used "to address an error or omission appearing in a deposit copy, or to add new material to a deposit copy").

[26] SoF at ¶¶24–25.

[27] SoF at ¶26.

[28] SoF at ¶¶ 39–42.

[29] SoF at ¶¶35, 40, 42.

[30] Copyright Office regulations require applicants to make "[a] declaration [] that the information provided within the application is correct to the best of the [applicant's] knowledge." 37 C.F.R. § 202.3(c)(3)(iii). Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records." COMPENDIUM (THIRD) § 602.4(C) ("the Office does not conduct investigations or make findings of fact to confirm the truth of any statement made in an application . . . .").

Further, by including all non-third party code in the claim in its Supplementary Registrations, Actian failed to exclude code that had been previously published, including code from Version 9.2.7.12 of the Software.[31]  Indeed, Actian published 9.2.7.12 by licensing it to many users, including VDS.[32]  The copyright claim also does not exclude, and hence includes 2006 code in the deposits, even though the Supplementary Registrations state the programs were created from 2007-2013.[33]  Since new deposits may not be submitted with supplementary application, the Office would assume those deposits (which are rife with errors) properly support the Supplementary Registrations.  The Supplementary Registrations for DI 9.3.0.9 UI and DI 9.3.0.9 Engine were issued on June 24, 2022 and July 1, 2022, respectively.[34]

## V.    LEGAL STANDARD

The Copyright Act requires the referral of registration questions to the Register when, as here, a party "allege[s]" that inaccurate information was included on a copyright application "with knowledge that it was inaccurate."  17 U.S.C. §§ 411(b)(1)–(2) ("the court **shall** request the Register of Copyrights to advise the court . . ." (emphasis added)); *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) ("courts are in agreement that the provision is mandatory").

Section 411(b)(1)(A) does not require a finding of intent-to-defraud, only "knowledge."  In *Unicolors,* the Supreme Court confirmed that "knowledge" simply is "the fact or condition of being aware of something."  *Id.* at 946-47 (citing case law and dictionaries).  It explicitly "[r]efus[ed] to impose a <u>scienter</u> requirement."  *See Lieb*, 2022 WL 1124850 (underline in original) (citing *Unicolors*, 142 S. Ct. at 947–48).  The Supreme Court also made clear that ignorance of

---

[31] SoF at ¶¶43-54.
[32] SoF at ¶55.
[33] SoF at ¶35.
[34] SoF at ¶¶27–28.

the law is not a free pass for copyright applicants:

> [C]ourts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law. We have recognized in civil cases that willful blindness may support a finding of actual knowledge. <u>Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information</u>.

*Id*. at 947-948 (emphasis added and citations omitted).

## VI.    ARGUMENT

The vastly different information provided in Actian's Supplementary Registrations is an admission by Actian that its Basic Registrations were inaccurate at least with respect to their titles, publication status, completion date, and material excluded from the copyright claim.   At a minimum, one set of registrations must be wrong and both cannot co-exist in the Copyright Office. By Actian's own admission, the information in the Basic Registrations was wrong, such that Actian tried to "correct" it with the Supplementary Registrations.   But the Supplementary Registrations are necessarily wrong because they cannot correct the persisting problems with the previously published code and the source code deposits.

Those inaccuracies were at least the result of willful blindness. But the earlier errors in the deposits made after the Examiner identified inconsistent information in the original submissions —were made with actual knowledge they still included unclaimable third party code and also 2006 code not claimed.   As discussed below, the Supplementary Registrations expanded these problems by narrowing the exclusion to just third party code, recapturing the 2006 code and versions of 9.0, 9.2, 9.2.7 code delivered to customers.

### A.      Actian Knowingly Claimed Previously Published Code to Enhance Its Copyright Infringement Claims

As noted in Plaintiffs' 4/11 Motion at 12, "[t]he U.S. Copyright Office does not offer so-called 'blanket registrations' that cover prior versions or derivative versions of the same work." COMPENDIUM (THIRD) § 504.3.  Rather, "each version of a computer program containing new, copyrightable authorship is considered a separate work" and applicants "must submit a separate application, filing fee, and deposit for each version" it seeks to register.  U.S. Copyright Office, Circular 61, available at https://www.copyright.gov/circs/circ61.pdf, at 2; *see also* COMPENDIUM (THIRD) § 512.2.  Therefore, the registration of a specific version of a computer program "does not cover any unclaimable material that may appear in that version," such as "[p]reviously published material."  COMPENDIUM (THIRD) § 721.8.  For example, "a registration for version 1.30 of a computer program does not cover version 1.20 or ***any previously published*** or previously registered content that appears in the later version of that program."  *Id.* § 504.3 (emphasis added). "If the program contains an appreciable amount of unclaimable material, the applicant should identify that material in the application and should exclude it from the claim . . . ." *Id.*

Despite working with experienced IP counsel to file its supplementary applications and clear instructions from the Compendium,[35] Actian *again* violated the rules.  Rather than excluding previously published code, and 2006 code, Actian sought to include all non-third party code in v. 9.3.0.9 in its Supplementary Registrations even though it knew that a substantial portion of that code was already published prior to the filing of the supplementary applications,[36] including when

---

[35] *See Lieb*, 2022 WL 1124850 at *7, 13 ("USCO materials [including the Compendium] regarding previously published work are easily understandable by anyone, including a lay person without a law degree . . . . The clarity of these resources, coupled with the simplicity of the information that [plaintiff] was asked to provide, make this a case where only willful blindness to the law can explain the inaccuracy at issue.").

[36] The Compendium makes clear that it is the applicant's responsibility to "determine whether the work contains previously published material on the date that the work is submitted to the Office."  COMPENDIUM (THIRD) § 621.4.

the allegedly infringed v. 9.2.7.12 was licensed to VDS in 2011 (and 8.12 was licensed to VDS at the end of 2006).  SoF at ¶¶50, 55.

Actian cannot dispute that it knew v. 9.3.0.9 contains "an appreciable" amount of code from v. 9.2.7.12 or that v. 9.2.7.12 that was previously published.  In fact, Actian's own expert, Mr. HelfinSiegel, says as much in commenting on Engine code and UI code, showing the  majority of the 9.3.0.9 UI source code is identical to 9.2.7.12 UI code.[37]  He also concludes that DI 9.2.7.12 and 9.3.0.9 are quantitatively and qualitatively similar.[38]  This issue is not a mere technicality – because if previously ***published*** 9.2.7.12 code is in the ***unpublished*** 9.3.0.9 code, then the 9.3.0.9 copyright does not cover it.  This means the code VDS used, 9.2.7.12 is not covered by the Supplementary Registrations, while VDS could not have infringed 9.3.0.9 code if it was never published.  (9.3.0.9 was *never published* by Actian's 30(b)(6) witness's own admission.  SoF at ¶18.).

Not only did Actian have the facts within its corporate knowledge in 2020 (and 2022), it had the benefit of the Copyright Office's circulars and Compendium sections cited herein and available online, instructions in the applications themselves, a "Help: Limitation of claim" page on the Copyright Office's website,[39] and a "Contact Form" on the Copyright Office's website in which applicants could ask questions of Copyright Office "Registration Specialists" (i.e.,

---

"In other words, if the applicant intends to register a work that contains an appreciable amount of material that was published ***at any time before the application is submitted***, the applicant should ***exclude*** that previously published material from the claim."  *Id.* (emphasis added).

[37] SoF at ¶52.

[38] Dkt. 174-12 (HelfinSiegel Rep.) at 19–20, 23.

[39]   *Help: Limitation of Claim*, U.S. Copyright Office (last accessed Jan. 26, 2023), https://www.copyright.gov/eco/help-limitation.html; *see also Lieb*, 2022 WL 1124850, at *10 (discussing "Help" page).  The electronic application form used by Actian contains links to various sections of this "Help" page that explain the requirement to exclude unclaimable material such as previously published material.

examiners) on issues including authorship and derivative works.[40]  In particular, the instructions to exclude previously published material (as well as previously registered material and material not owed by the claimant) from the copyright claim is explicitly stated on the page titled "Limitation of Claim" in the electronic application form used by Actian's counsel.  *See* Ex. E. Actian also had IP counsel to file both sets of applications and the benefit of Plaintiffs' prior motion to refer when applying for the Supplementary Registrations.  Further, as noted above, Actian's counsel had previously been contacted by the Copyright Office examiner (also called a Registration Specialist) about its improper original deposits and could have communicated with an examiner again when submitting its supplementary applications.  *Cf. Lieb*, 2022 WL 1124850, at \*14 (holding that the plaintiff was willfully blind of the inaccuracies in his registration in part because he chose not to avail himself of an invitation to communication with a Registration Specialist regarding his failure to disclose previously published work).  These clear resources have been noted in two recent cases granting motions to refer.  *See id.* at \*7-11, 13-14; *see also Neman Bros.*, 2023 WL 115558, at \*10 (discussing Copyright Office resources and concluding that the plaintiff was "at least willfully blind to the legal requirements of its copyright registration applications").

     *Lieb* is particularly instructive.  In that case, the court held that the plaintiff, who failed to disclose previously published material in his copyright application (just as Actian failed to do), could not argue that his lack of legal knowledge excused the inaccuracy based on the "clarity" of materials from the Copyright Office "readily available to all who seek to register copyrights," such as the Compendium.  *Lieb*, 2022 WL 1124850 at \*7, 13 ("USCO materials regarding previously

---

[40] *Contact Form*, U.S. COPYRIGHT OFFICE (last accessed Jan. 26, 2023), https://www.copyright.gov/help/; *see also Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 220CV11181CASJPRX, 2023 WL 115558, at \*10 (C.D. Cal. Jan. 4, 2023) (discussing availability of the "Contact Form" page to applicants).

published work are easily understandable by anyone, including a lay person without a law degree")
and at *8 ("All versions of the Compendium are consistent and clear with respect to disclosure of
prior work …").   The court explained that "[t]he clarity of these resources, coupled with the
simplicity of the information that [plaintiff] was asked to provide, make this a case where only
willful blindness to the law can explain the inaccuracy at issue." *Id.* at *13.  The same is true here
regarding each requirement Actian failed to satisfy.  Indeed, as the court in *Lieb* noted, "[t]he terms
'prior' and 'published' are not nuanced legal terms – they are plain English."

While intent-to-defraud is not necessary to trigger the mandatory referral process or to
invalidate the registrations, the record supports a finding that Actian improperly claimed all non-
third party code in v. 9.3.0.9 so it could claim its code was not published – and thereby gain a
litigation advantage.  Under the Copyright Act, a presumption of validity applies to works that are
registered within five years of the date of first publication.[41]   Actian's Basic Registrations do not
permit for this presumption because they were registered nearly 13 years after the claimed first
publication date in 2007.  By changing the publication status in the Supplementary Registrations
from published to *unpublished*, Actian may now try to argue its registrations are entitled to
presumptions of validity (and then try to shift its burden of going forward or of proof on the validity
of its copyrights).  *See* Compendium (Third) § 621.4 ("The U.S. Copyright Office requires
applicants to disclaim previously published material for several reasons" including to determine
"[w]hether the certificate of registration is entitled to certain legal presumptions.").

### B.    The Deposits Still Violate Copyright Requirements and Do Not Match the Works Claimed in the Supplementary or Basic Registrations

While Actian's Supplementary Registrations may have changed the title, publication

---

[41] 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

date/status, and Year of Completion to match DI v. 9.3.0.9, the deposits themselves cannot be fixed. As Plaintiffs noted in the 4/11 Motion, the deposits do not comply with the requirements to: (a) submit "'one copy of *identifying portions'* for the specific version of the program that the applicant intends to register," i.e., "*representative* portions,"[42] that (b) consist of "the first 25 and last 25 pages of source code" claimed or at least "fifty pages of source code that are representative of the new or revised material,"[43] and (c) do "not block out any portions of the source code that do not contain trade secret material."[44] Dkt. 170 at 12–15. The fatal deposit errors include at least the following:

- About 14% of the Engine deposit consists of previously published third-party code that is expressly excluded from the copyright claim in Supplementary Registration No. TXu 2-323-327, and thus not representative of the program Actian intended to register;[45]

- About 37.4% of the Engine deposit (1288 out of 3444 lines) are duplicated lines of code (including disclaimed third-party code) that do not appear in the underlying source code and thus cannot be used to meet the 50-page deposit requirement;[46] and

- Both the Engine and UI deposits redact non-trade secret material, which should not be credited towards the 50-page deposit requirement.[47]

- The Supplementary Registrations both state that the claimed code was created from 2007-2013, however, code in both deposits are associated with dates as far back as 2006.[48]. VDS licensed DI at the end of 2006, which was Version 8.1. The copyrights for which are registered as Nos. TX0009058232 and TX0009058230).[49] Accordingly, for this reason as well, the deposits are not representative of code created between 2007 and 2013.

---

[42] COMPENDIUM (THIRD) § 1509.1(F)(1) (citing 37 C.F.R. § 202.20(c)(2)(vii)) (emphasis added).

[43] Dkt. 170-12 (10/1/2020 email from Examiner re 9.x Engine advising Actian that "[t]he deposit requirement to register a computer program is the first 25 and last 25 pages of source code."); (Dkt. 170-13) (same re 9.x UI); COMPENDIUM (THIRD) § 1509.1(F)(4)(c).

[44] COMPENDIUM (THIRD) § 1509.1(F)(4)(d).

[45] Dkt. 174-6 (Martin 2nd Supp. Rep. at 5); Dkt. 170-14, Dkt. 174-15 (redacted and unredacted Engine deposit); Dkt. 170 at 11.

[46] Dkt. 174-4 (Martin Rep. at 22–23); (Dkt. 174-8) (Martin 1st Supp. Rep. at 6–7); Dkt. 170 at 14.

[47] Dkt. 170 at 17–18 and exhibits cited therein; Dkt. 137-1 at 4.

[48] SoF at ¶44.

[49] SoF at ¶46.

Actian knew about these issues and still filed for the Supplementary Registrations even though a valid copyright registration is dependent on the applicant having submitted an "appropriate . . . deposit to the Copyright Office."  17 U.S.C. § 408(a).

The fact that the deposits were not representative of the new material added in the claimed program and contain code from multiple versions of DI is even clearer now that Actian claims to register unpublished v. 9.3.0.9. created between 2007 and 2013.  Actian's corporate representative, Ms. Van Dyken, testified that the deposits include portions of code from v. 9.3.0.9 that were associated with copyright dates in *2006* and *2007*.  She "added some *2006*" because she "believe[d] there wasn't enough in the 2007."[50]   If the copyright dates in the deposits are trusted, they show that the deposits contain previously published code, rather than new material completed in 2013.  Put simply, the deposits do not match the information in Actian's Supplementary Registrations.

Nor do the deposits match the incorrect information in the Basic Registrations, which claim first publication and completion in 2007.  For example, 2009 code in the deposits could not have been completed and published in 2007.  This fatal deviation between the Basic Registrations and the deposits cannot be fixed now.[51]  Actian knew what was in its own software and how its deposits were assembled – and it cannot credibly claim ignorance of the clear Copyright Office requirements on software code deposits.

Deposits require 50 pages of representative code.  Copyright.gov, Circular 61, p.1. There are not 50 pages of representative code in each deposit because each includes unclaimable third party code and the Engine deposit includes a large amount of duplicative code.  Further, as to the supplementary registrations, the deposits include 2006 code pre-dating the 2007-2013 window as

---

[50] SoF at ¶23.

[51] *See* 37 C.F.R. § 201.7(c)(4)(v) (Copyright Office may cancel a registration if "[t]he application and [deposit] copy(s) . . . do not match each other and the Office cannot locate a copy . . . as described in the application elsewhere in the Copyright Office or the Library of Congress").

well as previously published 9.2.7 code, falling far short of the required 50 pages of representative code being copyrighted.  And as to the Basic Registrations, these defects and inclusion of 2009 code post-dating the 2007 publication date likewise causes the deposit to fall short.

### C.      Referral to the Copyright Office Now Is in the Interest of Efficiency

The Copyright Act calls for referral to the Register "[i]n any case in which" the knowing submission of materially "inaccurate information . . . is *alleged*."[52]  There is no required threshold burden of proof in the statute, only that the allegations be sufficiently developed to warrant further consideration by the Court.[53]  As shown in the accompanying Statement of Material Facts, the record here establishes that both conditions in § 411(b) have been satisfied to trigger a mandatory referral.  "[T]he Copyright Office's view [is] that the 'prudent practice' is for a court to issue a referral where the contested issues 'depend[ ] even in part on interpretation or understanding of the Copyright Office's registration practices.'"  *King-Devick Test*, 2019 WL 3071935, at *9 (quoting Response of the Register of Copyrights, *Olem Shoe Corp. v. Wash. Shoe Co*., No. 09 Civ. 23494 (S.D. Fla. Oct. 14, 2010), Dkt. 209 at 12 n.5).

In its Order seeking referral to the Register, the Court may request a response from the within a certain time period to avoid or minimize delay of the case.[54]  Plaintiffs propose that the Court request the Register's response within 45–60 days.  This is commensurate with the amount of time the Register has taken to respond to prior § 411(b) referrals, including when provided a

---

[52] 17 U.S.C. § 411(b)(2) (emphasis added); 37 C.F.R. § 205.14.

[53] *See King-Devick Test Inc. v. NYU Langone Hosps*., No. 17-CV-9307-JPO, 2019 WL 3071935, at *9 (S.D.N.Y. July 15, 2019) (Section 411(b)(2) "does not require that the Court await any evidentiary showing at all . . . .").

[54] In *King-Devick Test*, the court requested a response within 30 days of the Order, No. 17-CV-9307-JPO (S.D.N.Y. Sept. 4, 2019), Dkt. 105 at 1, and the Register complied. *Id.* (Oct. 4, 2019), Dkt. 108. Similarly, in *Mattress By Appointment LLC v. Adams*, the court requested a response within 46 days of its Order, No. 3:20-cv-222-MMH-PDB (M.D. Fla. Sept. 13, 2021), Dkt. 85 at 6, and the Register responded in 44 days. *Id.* (Oct. 27, 2021), Dkt. 89.

timeline by the court (or longer).[55]

## VII.   CONCLUSION

Plaintiffs respectfully request that this motion and record be sent with a request to the Register of Copyrights to advise on the questions in Exhibit A concerning the invalidity of Supplementary Registration Nos. TXu 2-323-327 and TXu 2-322-147 and Basic Registration Nos. TX0008902355 and TX0008902344.

---

[55] *Supra* n. 54 (responses in 30 and 44 days); *see also, e.g.*, Response of Register of Copyrights, *HealtheState, LLC v. United States*, No. 1:18-cv-34C (Fed. Cl. June 28, 2022), Dkt. 187 (48 days); Response of Register of Copyrights, *Longhorn Locker Co., LLC v. Hollman, Inc.*, No. 3:19-cv-02872-K (N.D. Tex. May 18, 2021), Dkt. 268 (48 days).

Dated: January 26, 2023                     Respectfully submitted,

                                            */s/ Danielle J. Healey*
                                            Paul McDonald/Bar No. 8626
                                            BERNSTEIN SHUR
                                            100 Middle Street, P.O. Box 9729
                                            Portland, Maine 04104-5029
                                            Telephone: (207) 774-1200
                                            Email: pmcdonald@bernsteinshur.com

                                            Danielle J. Healey (*pro hac vice*)
                                            FISH & RICHARDSON
                                            909 Fannin Street, Suite 2100
                                            Houston, Texas 77010
                                            Telephone: (713) 654-5300
                                            Email: healey@fr.com

                                            Adam Kessel (*pro hac vice*)
                                            FISH & RICHARDSON
                                            One Marina Park Drive
                                            Boston, MA 02210
                                            Telephone: (617) 542-5070
                                            Email: kessel@fr.com

                                            **Attorneys for Plaintiffs**
                                            **Covetrus, Inc. and**
                                            **Veterinary Data Services, Inc.**


## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on January 26, 2023, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which will send a notification of electronic filing to all counsel of record who have appeared in this case.

                                            */s/ Danielle J. Healey*
                                            Danielle J. Healey