# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MAINE

| | |
|---|---|
| COVETRUS, INC. and VETERINARY DATA SERVICES, INC.<br><br>Plaintiffs,<br><br>v.<br><br>ACTIAN CORPORATION<br><br>Defendant. | Case Number: 2:21-cv-00097-LEW |

## ACTIAN'S OPPOSITIONS TO PLAINTIFFS' MOTION TO REFER UNDER 17 U.S.C. § 411(B)(2) PURSUANT TO THE COURT'S DECEMBER 2, 2022 ORDER

## I.    <u>INTRODUCTION AND BACKGROUND</u>

Defendant Actian Corporation ("Actian") opposes the third Motion to Refer filed by plaintiffs Covetrus, Inc. and Veterinary Data Services, Inc. (collectively, "Plaintiffs"). Dkt. 176. Covetrus once again requests that the Court engage in a very rarely-used procedure, in order to delay these proceedings further.[1] In their first and foremost argument, Plaintiffs rely on a false presumption that the higher-numbered DataIntegrator Version 9.3.0.9 is newer than the lower numbered 9.2.7.10 that Plaintiffs used, to argue that Actian claim previously published code. But even testimony by Plaintiffs' own experts reveals the opposite to be true – Version 9.3.0.9 is in actuality senior and therefore proper.

The motion should be denied for those and the following reasons, and as discussed in detail below.

*First*, Actian did not claim any previously published code as Plaintiff argues. As Plaintiff should know but failed to disclose, even though registered Version 9.3.0.9 has a higher version number in its title, it is older and was created prior to Version 9.2.7.10.

*Second*, in their first three deposit-related arguments, Plaintiffs' fail to support their arguments with undisputed facts, in violation of Local Rule 56. And their fourth argument is irrelevant to any of the questions that Plaintiffs seek to refer to the Register of Copyrights.

*Third*, to the extent considered, the deposit-related arguments should also be denied on their merits. With regard to third-party code, Actian's PvswFileFilter.java file is not identical to Sun's ExampleFileFilter.java file. Rather, Actian modified the example file that Sun made freely-available to developers. Even if this is considered third-party code, which it should not be,

---

[1] Out of the over 57,808 copyright lawsuits filed since 2008 when the United States enacted the Prioritizing Resources and Organization for Intellectual Property Act of 2008, courts have referred copyright registration questions to the Copyright Office only 28 times. ASMF ¶¶ 40, 41.  By demanding this referral motion procedure, Plaintiffs have created at least three months of further delay in this lawsuit.

Actian properly excluded such material from its registration. With regard to duplication, the evidence shows that that the supposedly duplicated files only "nearly match," meaning that there is no exact duplication of source code files. Regardless, Actian's submission satisfied the purpose of a deposit, which is to prevent confusion about which work the author is attempting to register, and included the required appreciable amount of original computer code. With regard to trade secrets, Actian's redactions are a compilation of information that is used in Actian's business, which give Actian an opportunity to obtain an advantage over competitors who do not know or use it. The redactions qualify as trade secrets. Finally, the deposits are representative of code created between 2007 and 2013. Plaintiffs mistakenly conflate version control dates with dates in copyright notices, hence mistakenly believing the source code includes code from 2006.

*Fourth*, the validity of Actian's copyright registrations is protected by the "Safe Harbor" established in cases like *Unicolors*, protecting the registrations as valid because Actian did not submit any inaccurate information with *knowledge* that it was inaccurate. Plaintiffs' arguments that Actian had knowledge all fail. There is no concept of "corporate knowledge" under § 411(b)(2), and even if there were, Actian's corporate witness had no knowledge of any inaccuracies at the time of filing. The discrepancies that were the subject of the communications during examination related to the original deposits, not the replacement deposits that resolved those issues. Plaintiffs also apply the wrong timeframe for knowledge, by arguing that Actian learned of issues during litigation, whereas the relevant timeframe is prior to the litigation when the copyright applications were filed. And Actian is not guilty of willful blindless because, for example, it did not egregiously misapply any clear statute, and the *Unicolors* factors weigh against any such finding.

*Lastly*, Plaintiffs have failed to show that Actian had intent to defraud the Copyright Office. On the contrary, Actian no knowledge that its applications failed to comply with any requisite legal requirements.[2]

## II.    **BACKGROUND**

This is the third motion to refer that the Plaintiffs have filed in this action. Plaintiffs challenge the validity of Actian's Copyright Registration No. TX0008902355 covering the DataIntegrator 9.3.0.9 Engine, and Copyright Registration No. TX0008902344 covering the DataIntegrator 9.3.0.9 User Interface ("UI").[3]  In its December 2 ruling, the Court denied the first two motions without prejudice, and ordered that any subsequent motion be in the form of a "summary-judgment-style motion for referral" in compliance with Local Rule 56. Dkt. 184 at 10.

## III.   **LEGAL STANDARD**

A certificate of copyright registration "constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid." *Saenger Org. v. Nationwide Ins. Licensing Assocs.*, 119 F.3d 55, 59 (1st Cir. 1997). Under the Prioritizing Resources and Organization for Intellectual Property Act of 2008 (PRO-IP Act of 2008, a party seeking to invalidate a certificate of copyright registration must show both that: (A) "inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). The

---

[2] Plaintiffs' arguments regarding the Basic and Supplementary Registrations also fail. Plaintiffs contend that because Actian did not "withdraw" the Basic Registrations, there are now "two sets of conflicting registrations 'live' at the Copyright Office." Dkt. 196 at 1. This argument is simply wrong, because "[a] basic registration cannot be cancelled or abandoned with a supplementary registration." Compendium (Third) § 1802.7(G). Rather, the two registrations "coexist with each other in the public record, and the supplementary registration augments — but does not supersede — the information set forth in the basic registration."  *Id.* at 1802.

[3] These registrations originally referred to "DataIntegrator 9.x," but in the Supplementary Registrations, the title was changed to refer to Version 9.3.0.9.

"knowledge" requirement under the statute "refers to knowledge of the law as well as the facts." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 947 (2022).

On remand from the Supreme Court, the 9th Circuit further held that the PRO-IP act codified the doctrine of fraud on the Copyright Office. *Unicolors, Inc. v. H&M Hennes & Mauritz, Ltd. P'ship*, 52 F.4th 1054, 1066 (9th Cir. 2022). To show intent to defraud, a party seeking to invalidate a copyright registration under § 411(b) must also demonstrate that "the registrant knew that the application failed to comply with the requisite legal requirements," i.e. that they intended to defraud the Copyright Office, in addition to showing that the registrant submitted a registration application containing inaccuracies, and the inaccuracies in question were material to the registration decision by the Register of Copyrights. *Id. at* 1067.

## IV.   ARGUMENT

### A.   Actian Did Not Claim Previously Published Code

Ignoring facts from the well-developed record in this case, including testimony from their own copyright expert, Plaintiffs make the unsupported claim that Actian used "previously published" code in its two Version 9.3.0.9 registrations. It did not and both parties' experts agree that Version 9.3.0.9 predates Version 9.2.7.10.

With respect to the relevant dates of these two versions, the evidence shows that Version 9.2.7.10 of the Software was released in May, 2013. *See* Actian's Additional Statement of Material Facts ("ASMF") ¶ 1. And as stated in the Supplementary Registrations, Version 9.3.0.9 was created from 2007 to 2013. *Id.* ¶ 2. Indeed, the Version 9.3 branch was created before the release of 9.2.7. *Id.* ¶ 7. Plaintiffs' expert Peter Martin affirmed this timeline, testifying that "in-house development efforts were ongoing in parallel for a development stream related to a 9.2.7.x target and a separate development stream related to a 9.3.0.x target." *Id.* ¶ 9. And he noted, "[s]uch differences were not regarded as discrepancies." *Id.* ¶ 10. Fully impeaching Plaintiff's

present claim that 9.2.7 is younger, Mr. Martin specifically explained, 9.2.7 was the latest of the "version 9.x stream" to be released, and that "[t]o my knowledge, Actian has not publicly released Data Integrator as a product in the 9.x series of versions for which the version number is greater than 9.2.7." *Id.* ¶ 16.

While work on both versions continued until 2013, the source code shows that Version 9.3.0.9 was the older of the two versions, and Version 9.2.7.10 was newer. *Id.* ¶ 11. As such, Version 9.3.0.9 could not have included any "previously published code" from Version 9.2.7.10. There are two registrations for Version 9.3.0.9, for the Engine and UI code. With respect to the Engine code, Mr. HelfinSiegel determined that "[o]ut of 3,853 code files in version 9.3.0.9 Engine and 5,090 code files in 9.2.7.12 Engine, 3,496 source code files 9.2.7.12 are identical to 9.3.0.9; 309 files have been updated in 9.2.7.12; 48 files have been deleted; and 1,285 files are new." *Id.* ¶ 12 (emphasis added). Similarly, with respect to the UI source code, Mr. HelfinSiegel compared the "older 9.3.0.9" and "newer 9.2.7.12" versions, and determined that the latter had 89 updated files, 540 deleted files, and four new files. *Id.* ¶ 13. Thus, Mr. HelfinSiegel determined that the *newer* Version 9.2.7.10 Engine and UI code actually was a later version of the product, in which files had been updated, added, and deleted compared to the older Version 9.3.0.9 code. *Id.* ¶ 14. In short, across the Engine and UI code bases, the "newer" Version 9.2.7.10 contains 1,289 new files, 389 updated files, 588 deleted files compared to the "older" Version 9.3.0.9. *Id.* ¶ 15. Of course, Mr. HelfinSiegel also found that a substantial amount of code – 4,600 files to be exact – are identical between these versions, which is more than enough for a finding of "substantial similarity" which, along with "access" (not a disputed issue in this case) is the key requirement to finding copyright infringement. *Id.* ¶ 18. If this were not enough, the evidence further shows that Version 9.3.0.9 was in an earlier "CVS" revision control system

used at Actian, while Version 9.2.7.19 was in a later "Subversion" revision control system. *Id.* ¶¶ 3-6.

Plaintiffs contend that that "Version 9.2.7.10 was licensed to VDS in 2011." *See* Dkt. 196 at 14. But this is impossible, because according to *Plaintiffs'* expert, Version 9.2.7.10 was not released until May, 2013. ASMF ¶ 1. Plaintiffs rely on a distorted reading of Actian's interrogatory response. *See* Actian's Opposing Statement of Material Facts ("OSMF") ¶ 55. In fact, according to the software images they produced in discovery, Plaintiffs first installed Version 9.2.7.10 on May 16, 2016, not in 2011. ASMF ¶ 17. To be sure, sales records show that Plaintiffs purchased a version of DataIntegrator in January, 2011, but this could not have been Version 9.2.7.10, which was not released at the time. *Id.* ¶ 1. Moreover, while there were obviously earlier versions of the DataIntegrator software, there is no evidence in the record that Version 9.3.0.9 contains any previously published code. While Plaintiffs contend that Version 8.12 was licensed to VDS at the end of 2006, Dkt. 196 at 14, they offer no evidence that this was a prior publication of any source code that was in Version 9.3.0.9. Nor could they, because the functionality of Version 8 code was never an issue in this case.

As much as Plaintiffs arguments lack any support in the factual record, those arguments also simply lack legal merit. Plaintiffs' cited case law is inapposite. In *Lieb v. Korangy Publ'g, Inc.*, the plaintiff represented that an article he published on HuffPost was "an original, unpublished first version that was not based upon an earlier published article," when in fact the article was based on a "virtually-identical" previously published work that the plaintiff failed to disclose. No. CV 15-0040 (AYS), 2022 U.S. Dist. LEXIS 69510, at *12, 39 (E.D.N.Y. Apr. 14, 2022). By contrast, there is no evidence that Version 9.3.0.9 was based on any virtually identical previously published work. In *Neman Bros. & Assoc. v. Interfocus, Inc.*, Register of Copyrights

concluded that the Copyright Office would not have registered Neman Brothers' applications for its unpublished fabric design collections had it known the information about the authorship, work for hire status, and derivative work status was inaccurate. No. 2:20-cv-11181-CAS-JPRx, 2023 U.S. Dist. LEXIS 2143, at *33 (C.D. Cal. Jan. 4, 2023). But here, there are no such issues even alleged with respect to the registrations and software at issue.

Lastly, if Plaintiffs' argument has any merit (which it does not), Actian did not have knowledge of any inaccuracy relating to the inclusion of previously-published code, or knowledge of any such legal requirement. ASMF ¶¶ 49-50, 62-63.

### B. <u>The First Three Deposit-Related Arguments Should Be Denied Because Plaintiffs Failed to Comply With Local Rule 56</u>

In the December 2 Order, the Court denied without prejudice Plaintiffs' two prior motions to refer and ordered that any future motion to refer be made "in conformance with Local Rule 56." Dkt. 184 at 9. This was to "ensure that the parties provide an orderly presentation of the issues" and to make sure that any resulting questions "involve genuine issues." *Id.* The requirements of Local Rule 56 are clear: a motion "shall be supported by a separate, short, and concise statement of material facts, each set forth in a separately numbered paragraph(s), as to which the moving party contends there is no genuine issue of material fact to be tried." L.R. 56(b). And "[e]ach fact asserted in the statement shall be simply and directly stated in narrative without footnotes or tables and shall be supported by a record citation as required by subsection (f) of this rule." *Id.* Compliance with Local Rule 56 was especially important given that Plaintiffs' prior motions "resemble[d] a fusillade more than an orderly presentation." *Id.* at 8.

Despite the Court's clear instructions, Plaintiffs failed to follow Local Rule 56 for the first three of the four arguments presented in Section VI.B of their motion, entitled "The

Deposits Still Violate Copyright Requirements and Do Not Match the Works Claimed in the Supplementary or Basic Registrations." Dkt. 196 at 17. These arguments are set forth in four bullet points, with attorney argument that (1) about 14% of the Engine deposit consists of previously-published code; (2) that about 37.4% of the Engine deposit are duplicated lines of code; and (3) that the Engine and UI deposits redact non-trade secret code. *Id.* For support, Plaintiffs cite footnotes 45, 46 and 47, respectively, *none of which cite to any statement of undisputed fact*, but simply instead cite to their prior filings:

[45] Dkt. 174-6 (Martin 2nd Supp. Rep. at 5); Dkt. 170-14, Dkt. 174-15 (redacted and unredacted Engine deposit); Dkt. 170 at 11.
[46] Dkt. 174-4 (Martin Rep. at 22–23); (Dkt. 174-8) (Martin 1st Supp. Rep. at 6–7); Dkt. 170 at 14.
[47] Dkt. 170 at 17–18 and exhibits cited therein; Dkt. 137-1 at 4.

Dkt. 196 at 17.

As the moving party, Plaintiffs bore the burden to cite undisputed facts in compliance with Local Rule 56. *Learnard v. Inhabitants of Van Buren*, 182 F. Supp. 2d 115, 120 (D. Me. 2002). This Court has held that a party's failure to follow Local Rule 56 is sufficient ground to deny a motion for summary judgment. *See Lauzon v. Dodd*, No. 2:16-cv-00051-LEW, 2019 U.S. Dist. LEXIS 113267, at *4 (D. Me. July 9, 2019). Denial is warranted here given the Court's clear instructions and Plaintiffs' repeated bites at the apple.

### C.  The Fourth Deposit-Related Argument Should Be Denied as Irrelevant

Plaintiffs' fourth argument is that the deposits are "not representative" of code created between 2007 and 2013. Dkt. 196 at 17. This argument should be denied as irrelevant, because it has no counterpart in any of the four questions that Plaintiffs request that the Court refer to the Register of Copyrights. *See* Dkt. 196-3. Of the four proposed referral questions, only the third argues that the deposit is "not representative" of the claimed material, but this argument relates

8

to the supposed presence of third party or duplicated code, which corresponds to the first and first and second bullet points, not the fourth bullet point. Dkt. 196 at 17.

### D. The Deposits Do Not Violate Any Copyright Requirements, and Match the Works Claimed

To the extent the Court considers any of the four deposit-related arguments, those arguments should also be denied on their merits for the following reasons.

#### 1. The Engine Deposit is Representative of the Engine Code

Plaintiffs contend that "about 14%" of the Engine deposit of Version 9.3.0.9 consists of "previously published third-party code" that is expressly excluded from the copyright claim, and the deposit is therefore "not representative" of the program Actian sought to register. Dkt. 196 at 17 (First Bullet). Plaintiffs cite no statements of fact in support of this argument, which should therefore be disregarded. *Supra*, Section IV.B.

To the extent the Court considers this argument, the evidence shows that the source code file that was included in the deposit, called PvswFileFilter.java, is *not identical* to any third-party code file. ASMF ¶ 19. Rather, Actian modified an example file that Sun made freely-available to developers. *Id.* ¶ 20.

Moreover, even if any third-party material is in the deposit, which has not been shown, Actian properly excluded all third-party code in its Supplementary Registration. *Id.* ¶ 21. Plaintiffs do not cite any rule requiring that a deposit not contain any excluded material. On the contrary, for computer programs of more than 50 pages in length that contain trade secrets, the applicant may simply submit the first and last 25 pages with redactions. Compendium (Third) § 1509.1(F)(4)(b). This is the procedure Actian followed. OSMF ¶ 22. Actian's submissions thereby satisfied the purpose of a deposit, which is "to prevent confusion about which work the

9

author is attempting to register." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 n.2, 130 S. Ct. 1237, 1243 (2010). Plaintiffs do not contend that there is any confusion about which work Actian intended to register, which their expert Mr. Martin correctly identified as DataIntegrator Version 9.3.0.9. ASMF ¶ 22.

Actian's deposit also includes the required amount of original computer code – at least the first 25 and last 25 pages, with less than 50% being redacted as trade secret. To further the purpose of a deposit, "all that is required is enough of the source code to reveal <u>an appreciable amount of original computer code</u>." *KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915, at *27 (N.D. Cal. Dec. 17, 2008) (emphasis added), *citing* 37 C.F.R. § 202.20(c)(2)(vii)(A)(2) (deposit must contain "an appreciable amount of original computer code"); *see also* Compendium (Third) § 1509.1(F)(4)(b), *Talavera v. Glob. Payments*, Inc., No. 21-CV-1585 TWR (AGS), 2021 U.S. Dist. LEXIS 221365, at *7 (S.D. Cal. Nov. 16, 2021) (citing statute). Actian met this requirement and Plaintiffs do not dispute that at least the remaining 86% of the deposit, comprising 43 pages of material, is Actian's original computer code relating to the DataConnect Engine. ASMF ¶¶ 23-24. By contrast, in interpreting the term "appreciable amount" for purposes of copyrightability, courts have found that short phrases containing only a few words, such as "go on the clock," and "begin earning $ 25 an hour" do not contain an "appreciable amount" of material. *See CMM Cable Rep. v. Ocean Coast Props.*, Inc., 888 F. Supp. 192, 198 (D. Me. 1995), *citing Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (holding that "most personal sort of deodorant" is short phrase or expression, not an "appreciable amount of text," thus not protectible by copyright). Actian's

submission of at least 43 pages of material (after excluding portions that Plaintiffs claim to be third-party code) is therefore more than an "appreciable amount" of original code.

Lastly, Actian is unaware of any legal requirement that a deposit must not contain excluded third-party material. ASMF ¶¶ 45, 58. If such a requirement exists, Actian did not knowingly include any third-party information in the Engine deposit. ASMF ¶¶ 44, 57.

### 2. **The Engine Deposit Meets the 50-Page Requirement**

Plaintiffs' second argument is that approximately 37.4% of the Engine deposit is comprised of "duplicated lines of code." Dkt. 196 at 17 (Second Bullet). Plaintiffs cite no statements of fact in support of this argument, which should therefore be disregarded. *Supra*, Section IV.B.

To the extent the Court considers this argument, the evidence shows that that the supposedly duplicated files only "nearly match," meaning that there is no exact "duplication" of source code files at all. ASMF ¶¶ 25, 26. In fact, Mr. Martin's identification of duplicated lines cannot mathematically be correct. *Id.* ¶ 25 (alleging that 97 lines "nearly match" 1,097 lines, and the 292 lines "nearly match" 299 lines). And even if there were duplication, Plaintiffs do not dispute that the remaining 62.6% of the 50-page Engine deposit, comprising least 2,155 lines and 31 full pages of source code, is original unduplicated source code. *Id.* ¶ 27. This is, again, more than the "appreciable amount of original computer code" required of a deposit. 37 C.F.R. § 202.20(c)(2)(vii)(A)(2); Compendium (Third) § 1509.1(F)(4)(b).

Plaintiffs also fail to cite any authority that a deposit containing some amount of duplication is not "representative" or "identifying" portions of source code. Tellingly, duplication in a deposit is not among the situations where the Copyright Office will refuse registration. *Id.* at § 1503.2. Plaintiffs wrongly seek to impose a "best edition requirement,"

11

which is that the applicant must submit the edition that is determined to be "most suitable for its purposes." *Id*. at § 1504. But DataIntegrator 9.3.0.9 was unpublished. ASMF ¶ 28. Actian was therefore not required to comply with the best edition requirement. Compendium (Third) at § 1504.1 (exempting "Unpublished works" from the best edition requirement).

Finally, Actian is unaware of any legal requirement that a deposit must not contain any duplicated material. ASMF ¶¶ 47, 60. To the extent any such requirement exists, Actian did not knowingly include any duplicated material in the deposit. *Id.* ¶¶ 46, 59.

### 3.   **The Deposits Redact Trade Secrets**

Plaintiffs' third argument is that the Engine and UI deposits redact "non-trade secret material, which should not be credited towards the 50-page requirement." Dkt. 196 at 17 (Third Bullet). Again, Plaintiffs cite no statements of fact in support of this argument, which should be disregarded. *See supra*, Section IV.B.

To the extent the Court considers this argument, the evidence shows that Actian's redactions were proper. "For purposes of registration, a trade secret includes 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" Compendium (Third) § 1509.1(F)(4)(a), citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 474-75 (1974) (quoting the Restatement of Torts § 757, comment b (1939)). The redacted material meets this standard. It is a compilation of information that is used in Actian's business. ASMF ¶¶ 31-32. And it gives Actian an opportunity to obtain an advantage over competitors who do not know or use it. *Id.* ¶¶ 33-35. Plaintiffs' expert conceded that Actian's source code was not publicly available to Actian's competitors. *Id.* ¶ 29.

At best, Plaintiffs merely assert that Mr. Martin has not seen similar redactions in the past. Motion at 7, fn. 26, citing First Mot. 17-18. However, Mr. Martin also admitted that this is the first copyright case in which he has ever provided any opinions, so it stands to reason that he has not before seen similar redactions. ASMF ¶ 30. Mr. Martin also admitted that he had no opinions as to whether the redactions were trades secrets. *Id.* ¶ 76.

Finally, the Safe Harbor applies because Actian did not knowingly redact non-trade secret material. *Id.* ¶¶ 48, 61.

### 4.  <u>The Deposits Are Representative of Code Created Between 2007 and 2013</u>

Plaintiffs' final argument is that the deposits are "not representative of code created between 2007 and 2013." Dkt. 196 at 17 (Fourth Bullet). This argument should be denied as irrelevant, because it has no counterpart in any of the four questions that Plaintiffs request that the Court refer to the Copyright office. *Supra*, Section IV.C.

To the extent the Court considers this argument, the two cited statements of fact do not support it. First, Plaintiffs mistakenly conflate version control dates with dates in copyright notices. OSMF ¶ 44. Copyright notices in Actian's code require manual updating, which does not always occur when code is subsequently modified. ASMF ¶ 36. This is supported by Mr. Martin, who opined that "dates to the nearest year which were embedded in copyright notices," such as the 2006 dates in copyright notices, "were often earlier than dates found in version control lines." *Id.* ¶ 37. For this reason, Plaintiffs mistakenly believe that the source code includes code from 2006. Second, the other statement of fact Plaintiffs cite in support of this argument merely states that Version 8.12 of the Software is covered by a separate copyright registration. Dkt. 196 at 17, fn. 49 (citing Dkt. 196-1 at ¶ 46). This fails to show that the Version 9 deposits are not representative of code created between 2007 and 2013.

13

Moreover, as with Plaintiffs' other arguments, there is no law or rule that Actian violated. On the contrary, deposits may consist of the first and last 25 pages of source code, with up to 50% of that redacted for trade secrets. Compendium (Third) § 1509.1(F)(4)(b). Plaintiffs cite no rule requiring that the applicant must remove pages from the deposit and replace them with source code corresponding to every single year of creation, because there is no such rule.

Finally, Actian is unaware of any legal requirement that a deposit contain material from every year of creation. ASMF ¶¶ 52, 65. Even if such a requirement exists, Actian did not knowingly include code that is not representative of the registered versions. *Id.* ¶¶ 51, 64.

**E.  <u>The Safe Harbor Applies Because Actian Did Not Submit Any Inaccurate Information with Knowledge That it Was Inaccurate</u>**

A certificate of registration "is valid even through it contains inaccurate information, as long as the copyright holder lacked 'knowledge that it was inaccurate.'" *Unicolors*, 142 S. Ct. at 943 (2022). This Safe Harbor applies equally to any inaccuracies in the deposits, as well as the applications. *Data Gen.*, 36 F.3d at 1161 (1st Cir. 1994).

For the reasons discussed above, Plaintiffs have failed to show as a threshold matter that there are any inaccuracies in Actian's applications or deposits. *Supra*, Sections IV.C-D. But even if there were, Plaintiffs have failed to show that Actian included any inaccurate information in its applications or deposits "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). Indeed, Actian had no such knowledge. ASMF ¶¶ 38-52, 53-65, 75. On the contrary, Plaintiffs' expert agreed that any alleged inaccuracies arose as a result of inadvertent "mistakes," which he was able to explain with reference to Actian's deposition testimony and his inspection of the underlying source code materials. *Id.* ¶¶ 66-74. Such mistakes are the anthesis of the knowing and intentional misrepresentation that is required under § 411(b). It is well-settled that

inadvertent mistakes do not invalidate a copyright registration. *Embassy Software Corp. v. eCopy, Inc.*, 592 F. Supp. 2d 225, 229 (D.N.H. 2009) ("[M]ost errors or mistakes in a copyright registration application will be inadvertent or immaterial, and thus will not invalidate the application (or any resulting certificate).") The § 411(b) safe harbor therefore applies, and the motion to refer should be denied on this grounds alone. *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 1:15-cv-7404-GHW, 2016 U.S. Dist. LEXIS 147336, at *7-8 (S.D.N.Y. Oct. 24, 2016) ("A factual finding that inaccurate information was knowingly included on a copyright application is a prerequisite to invalidating a copyright, 17 U.S.C. Section 411(b)(1)(A), and because that prerequisite is not satisfied, it is not appropriate to seek the advice of the Register at this time.")

Plaintiffs make four arguments that Actian had knowledge, all of which fail. First, Plaintiffs attempt to sidestep the knowledge requirement altogether by arguing that Actian had "corporate knowledge" of inaccuracies. Dkt. 196 at 4-5. But no such concept exists under Section 411(b). *See Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 U.S. Dist. LEXIS 95099, at *28 (N.D. Ill. July 14, 2014) (citing lack of evidence "connecting the individual employees" of a corporation with alleged knowledge), *citing Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 707 (7th Cir. 2008) (refusing to rely on collective corporate knowledge as the basis for a fraud claim — "[i]ntent to deceive is not a corporate attribute"). Moreover, as the Supreme Court has observed, "applicants include novelists, poets, painters, designers and others without legal training." *Unicolors*, 142 S. Ct. at 947 (2022). Actian's deposits were created by one such individual, Ms. Van Dyken, who is an engineer without any legal training or prior experience creating copyright deposits. ASMF ¶ 54. Ms. Van Dyken had no knowledge of any inaccuracies at the time of filing. *Id.* ¶ 56. And even if a concept of

15

"corporate knowledge" exists, Ms. Van Dyken's testimony would be that of Actian because she served as Actian's corporate 30b6 representative regarding the copyrights. OSMF ¶ 16.

Second, Plaintiffs argue that "in the course of its Basic Registrations, Actian had detailed communications with the examiner about discrepancies in the deposit." Dkt. 196 at 5. But as Plaintiffs admit, "[i]n response to the Examiners' inquiries, Actian submitted new source code deposits for each application," and the registrations then issued. OSMF ¶¶ 13 and 15. The discrepancies that were the subject of the communications therefore related to the original deposits, not the replacement deposits that were submitted which resolved the issues.

Third, Plaintiffs argue that "[b]y the time of the Supplementary Registrations, Actian also had the benefit of the detailed briefing on the motion to refer (Dkt. 170), depositions of its own corporate representatives, and Plaintiffs' expert reports and depositions." Dkt. 196 at 5. This argument applies the wrong timeframe. The relevant question under § 411(b)(1)(A) is whether inaccurate information "was included on the application for copyright registration" with knowledge that it was inaccurate. The applications and deposits were submitted in the September – October 2020 timeframe. ASMF ¶ 42. It is irrelevant whether Actian *later* found out about some inaccuracies in the original applications and addressed those in the Supplementary Registrations. Actian did not modify the deposits in the Supplementary Registrations, and Plaintiffs do not make any allegation that the Supplementary Registrations contain errors. Thus, the relevant timeframe is September – October 2020, when the deposits and original applications were submitted, and at that time Actian had no knowledge of any alleged errors that Plaintiffs contend exist. *Id.* ¶¶ 38-52, 53-65, 75.

Lastly, Plaintiffs argue that Actian is guilty of willful blindless. Dkt. 196 at 5-6. Willful blindness may apply where a party to take a position that "egregiously misapplies a clear statute."

16

*Unicolors*, 52 F.4th 1069 (9th Cir. 2022). For example, in *Lieb*, the applicant registered an article as an "original, unpublished first version that was not based upon an earlier published article," where the evidence showed that the article was a "near verbatim transcription" of an article that the same applicant had previously published on a different website. 2022 U.S. Dist. LEXIS 69510 at *40-41. The applicant egregiously misapplied the requirement that the applicant "identify the previously published material upon which the [article] was based." *Id*. at *39. The court found that "the clarity of [the Copyright Office] resources, coupled with the simplicity of the information" that the applicant was asked to provide, "makes this a case where only willful blindness to the law can explain the inaccuracy at issue." *Id*. at *41.

The instant case is much different from *Lieb*, and the facts here do not support a finding of willful blindness. Actian's software was not previously published, so there is nothing equivalent to the original article in *Lieb* that appeared online. And Actian complied with the applicable rules by submitting source code deposits that include an "appreciable amount of original computer code," as required. 37 C.F.R. § 202.20(c)(2)(vii)(A)(2); Compendium (Third) § 1509.1(F)(4)(b). While circumstantial evidence, "including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law," may also lead to a finding of actual knowledge or willful blindness, *Unicolors*, 142 S. Ct. at 948, Plaintiffs present no analysis or evidence under these factors. Dkt. 196 at 5-6. And a consideration of these factors weighs strongly against any finding of willful blindness. ASMF ¶¶ 38-65. Indeed, this is not a case where "only willful blindness" can explain inaccuracies, because Plaintiffs expert admitted that any errors were simply the result of mistakes. *Id.* ¶¶ 66-74.

### F.  Actian Had No Intent to Defraud the Copyright Office

Plaintiffs' motion should be denied for all the reasons discussed above, even if there is no intent to defraud requirement. But regardless of any inaccuracies or mistakes remaining in the copyright registrations (and none have been shown), they are valid and the Court must deny this motion for the additional reason that Plaintiffs have failed to show Actian had any intent to defraud the Copyright Office.

### 1.  The Law Requires Intent to Defraud the Copyright Office

Following remand in the *Unicolors* case decided last year by the Supreme Court, the Ninth Circuit held that the "clear implication" of the high court's opinion is that "the PRO-IP Act was intended to codify the fraud on the Copyright Office doctrine." *Unicolors*, 52 F.4th at 1066 (9th Cir. 2022). Other courts around the country have made similar findings. *See Furnituredealer.net, Inc. v. Amazon.com, Inc.*, No. 18-232 (JRT/HB), 2022 U.S. Dist. LEXIS 54509, at *3 (D. Minn. Mar. 25, 2022) ("17 U.S.C. § 411(b) codified the affirmative defense of fraud on the Copyright Office and requires a showing of intent-to-defraud"); *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 n.3 (7th Cir. 2013), *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 267 n.4 (5th Cir. 2020), *Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 232 (3d Cir. 2010). And importantly, the Copyright Office itself has held that Congress "amend[ed] section 411 of the copyright law to codify the doctrine of fraud on the Copyright Office in the registration process."[4]

---

[4] *See U.S. Copyright Office, Annual Report of the Register of Copyrights, Fiscal Year Ending September 30, 2008 13 (2008)*, https://www.copyright.gov/reports/annual/2008/ar2008.pdf.  The doctrine of fraud on the Copyright Office was also applied and referenced by the First Circuit prior to the PRO-IP Act, which was enacted in 2008. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161 (1st Cir. 1994), citing 2 Nimmer § 7.20, at 7-201 ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration certificate incapable of supporting an infringement action.")  The doctrine was also applied by courts in this Circuit after 2008.  *See, e.g., Sierra-Pascual v. Pina Records, Inc.*, 660 F. Supp. 2d 196, 203 (D.P.R. 2009) ("The party asserting fraud must establish that the application for copyright registration is

To show intent to defraud, a party seeking to invalidate a copyright registration under § 411(b) must demonstrate that "the registrant knew that the application failed to comply with the requisite legal requirements," i.e. that they intended to defraud the Copyright Office, in addition to showing that the registrant submitted a registration application containing inaccuracies, and the inaccuracies in question were material to the registration decision by the Register of Copyrights. *Unicolors*, 52 F.4th at 1067 (9th Cir. 2022).

## 2.  Actian Had No Intent to Defraud the Copyright Office

Plaintiffs have failed to show that Actian had intent to defraud the Copyright Office, and Actian did not have any such intent. ASMF ¶¶ 43, 56. And Plaintiffs own expert agrees. *Id.* ¶¶ 66-75.

Plaintiffs merely contend that § 411(b) does not require a finding of intent-to-defraud, citing *Lieb*. Dkt. 196 at 11. The *Lieb* opinion, however, issued in April 2022, before the November 2022 Ninth Circuit *Unicolors* opinion finding that the PRO-IP act codified the doctrine of fraud on the Copyright Office. The *Lieb* court also based its opinion on the incorrect finding that *Unicolors* "refus[ed] to impose a scienter requirement." *Id.* at *38. But in fact, *Unicolors* holds that "if Congress had intended to impose a scienter requirement other than actual knowledge, it would have said so explicitly." 142 S. Ct. at 947 (emphasis added). Thus, *Unicolors* did impose a scienter requirement – that the registrant must have "actual knowledge" that the application failed to comply with the requisite legal requirements. *Lieb* simply got it wrong.

---

factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations.")  As a result, the same rule should apply in the First Circuit.

### G. **No Referral Should be Made**

No referral should be made, because Plaintiffs have failed to show that any inaccuracies exist, and that even if they did, Actian knowingly submitted inaccurate information in its copyright applications. *See Palmer/Kane*, 2016 U.S. Dist. LEXIS 147336 at *7-8 (S.D.N.Y. Oct. 24, 2016) ("A factual finding that inaccurate information was knowingly included on a copyright application is a prerequisite to invalidating a copyright, 17 U.S.C. Section 411(b)(1)(A), and because that prerequisite is not satisfied, it is not appropriate to seek the advice of the Register at this time.") Additionally, Plaintiffs have failed to show that Actian had any intent to defraud the Copyright Office. *Unicolors,* 52 F.4th at 1066 (9th Cir. 2022).

## V.    **CONCLUSION**

For the foregoing reasons, Actian respectfully requests that the Court deny the motion to refer.


Dated: March 13, 2023                             Respectfully submitted,
                                                  /s/ Robert E. Mittel
                                                  Robert E. Mittel, Esquire
                                                  Petruccelli, Martin & Haddow LLP
                                                  Two Monument Square, Suite 900
                                                  Portland, Maine 04112-8555
                                                  Telephone: 207-253-6417
                                                   rmittel@pmhlegal.com

                                                  Ryan E. Hatch
                                                  Hatch Law, PC
                                                  13323 W. Washington Blvd., Suite 302
                                                  Los Angeles, CA 90066
                                                  Telephone: (310) 279-5076
                                                  ryan@hatchlaw.com

                                                  Alan D. Sege (SBN 177350)
                                                  13323 Washington Blvd., Suite 302
                                                  Los Angeles, California 90066
                                                  Telephone: (310) 957-3301
                                                  alan@alansege.com

Attorneys for Defendant and Counterclaim
Plaintiff Actian Corporation

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 13, 2023, Defendant served Actian's Oppositions to Plaintiffs'

Motion to Refer Under Section 17 U.S.C. § 411(B)(2) Pursuant to the Court's December 2, 2022

Order to Plaintiffs Veterinary Data Services and Covetrus, Inc. Service was sent via electronic

mail to the following counsel for Veterinary Data Services, Inc., and Covetrus, Inc.

| | |
|---|---|
| Paul McDonald<br>BERNSTEIN SHUR<br>100 Middle Street, P.O. Box 9729<br>pmcdonald@bernsteinshur.com | Danielle J. Healey<br>FISH & RICHARDSON<br>1221 McKinney Street<br>Suite 2800<br>Houston, Texas 77010<br>healey@fr.com<br><br>Adam J. Kessel<br>FISH & RICHARDSON<br>1 Marina Park Drive,<br>Boston, MA 02210<br>kessel@fr.com |

*/s/ Ryan Hatch*
Ryan Hatch