UNITES STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| COVETRUS INC., and VETERINARY DATA SERVICES, INC., | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | No. 2:21-cv-00097-LEW |
| ACTIAN CORPORATION, | ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) | |

## **DECISION AND ORDER**

In this action, Covetrus Inc. and Veterinary Data Services, Inc. ("Plaintiffs"), request declaratory relief stating that they did not breach the end-user licensing agreement ("EULA") or infringe the copyright of Actian Corporation ("Defendant") pertaining to Actian's DataIntegrator software. Defendant counterclaims for breach of the EULA and copyright infringement.

The matter is before the Court on Plaintiffs' Motion to Refer (ECF No. 196) and Defendant's related Motion to Exclude Testimony (ECF No. 194) and Motion for Leave to File First Supplemental Counterclaims (ECF No. 213). For reasons that follow, the Motion to Refer is denied, the Motion to Exclude is denied, and the Motion for Leave to Supplement is granted.

## Background

The present dispute is about copyright registration rather than the merits of the parties' claims.  The copyright registrations that are in issue concern the software application DataIntegrator ("DI").  Defendant Actian, a California-based computer software company, has licensed DI software use by others, including Plaintiff Veterinary Data Services, Inc., a Kentucky corporation that provides data integration and related services to the veterinary industry.[1]

Defendant first applied to register its copyright in its DI Version 9 software in 2020. Defendant's registration applications requested copyright registrations for both the DI engine (identified as the "DI 9.x Engine") and the related user interface (identified as the "DI 9.x UI").  The original applications stated that the DI software consisted of published and original works of authorship.  The Copyright Office awarded basic certificates of registration for both the engine and the interface in October 2020 (more on that later).

Sometime in 2020, the parties entered into a dispute over the scope of Plaintiffs' use of the DI Version 9 software.  Rather than wait to be sued, Plaintiffs instituted this action in April 2021, seeking a declaratory judgment that they did not infringe Defendant's copyrights or violate the EULA pertaining to DI Version "9."  Complaint ¶¶ 1, 15 (ECF No. 1).  Defendant promptly filed an answer and a counterclaim (subsequently amended)

---

[1] Co-Plaintiff Covetrus, Inc., a Maine-based animal health company that provides technology solutions to veterinary practices, has an ownership interest in Veterinary Data Services through a chain of subsidiaries. Pls.' Corporate Disclosure Stmt. (ECF No. 3).  This case includes a controversy whether Covetrus, a non-signatory to the EULA, can be liable to Actian for breach of the agreement or infringement of copyrights in the DI software.  See Order on Motion to Dismiss (ECF No. 88).

for breach of the EULA and infringement of its copyrights in DI Version "9.2.7.10." Second Am. Counterclaims ¶¶ 11, 40 (ECF No. 91).

Ensuing discovery efforts focused in part on the bona fides of Defendant's statements and the quality of the source code deposit filed with the Copyright Office in support of Defendant's applications and basic certificates of registration. Various controversies emerged that stem, in part, from the fact that Defendant had registered its DI Version 9 software as "DI 9.x" even though it internally maintained and was then developing two parallel and closely related versions of DI Version 9, a Version 9.2 and a Version 9.3, evidently intending for its registration of DI 9.x to cover both versions.

Among the disputes was a concern with the representative source code Defendant deposited in support of its registrations. To prepare its representative source code deposit for the DI 9.x registration, Defendant pulled all the source code's constituent files regardless of directory, filtered out non-code, sorted the files alphabetically from A to Z, and chose what came up in the first 25 pages and the final 25 pages of code, after which certain redactions were made. In this effort efficiencies were achieved but a quality deposit was not. The assigned copyright examiner criticized certain shortcomings of the initial deposit and sent Defendant back to its file folders. Defendant then performed keyword searches for a 2007 copyright date in the source code to ensure that primarily Version 9.3 representative code would be deposited the second time around. This second attempt, although an improvement over the first, still resulted in a handful of issues (all fodder for Plaintiffs' expert witness) that engendered Plaintiffs' motion for referral. However, for purposes of the Copyright Office's application review process, the second deposit sufficed

to secure the initial registrations of the DI 9.x engine and interface. Certificates of Registration (ECF Nos. 170-3, 170-4).

In addition to the source code concern, another dispute arose over prior publication of Version 9.2 and whether prior publication, if established,[2] would prevent the registration of Version 9.x from serving as an effective registration of Version 9.2.7.10. This caused Defendant to pursue supplementary registrations with the Register that were meant to clarify that the Version 9.x registration really should be renamed Version 9.3.0.9,[3] having no prior publication,[4] with a revised year of completion of 2013 and with the years of creation being 2007 to 2013.[5] Defendant also amplified the work excluded reference from

---

[2] The determination of whether a computer program has been published is not necessarily straight-forward. *See*, *e.g.*, *Telecomm Tech. Services, Inc. v. Siemens Rolm Commc'ns, Inc.*, 66 F. Supp. 2d 1306, 1322 (N.D. Ga. 1998) (recognizing that "limited publication" may not qualify as "publication" for purposes of the definition of publication found in § 101 of the Copyright Act); *Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, No. C 93-20079 JW, 1995 WL 836331, at *5 (N. D. Cal. Dec. 14, 1995) (same).

[3] The Copyright Office permits supplementation to change the title of the work (understanding that it is still the same work of authorship). Compendium § 1802.6(C).

[4] The Copyright Office permits this kind of supplementation. Compendium § 1802.6(I) ("As a general rule, an error involving the date of publication for the work may be corrected with a supplementary registration. . . . For instance, if the applicant mistakenly provided a date of publication for a work that has not been published, a statement may be added to the registration record to clarify that the work is actually unpublished.").

[5] The Copyright Office permits supplementation of the year of completion so long as the new year is not later than the effective date of registration. Compendium § 1802.6(G). The Copyright Office registered the works in 2020, so the revised dates are permitted dates. Plaintiffs challenged the validity of the 2007–2013 date representation, asserting that the final deposit contains code from 2006, 2007, and 2008, with no dates later than 2009. Based on Plaintiffs' assertions, I reviewed the record only to determine that the passages in the code are version control entries from historical copyright notices preserved in the code (essentially, historical artifacts associated with earlier coding efforts). When code is modified and updated, coders should manually update the notices to bring them up to date, but this does not always occur. Plaintiffs' expert, who scrutinized the various code submissions, observed that dates embedded in copyright notices were often earlier than dates found in nearby version control lines. In effect, one can conclude that the source code deposit includes outdated or non-updated copyright notices but not that the surrounding code was not in fact a more recent work of authorship.

"computer program, artwork," to provide that the work excludes third party code and artwork. The Register thereafter issued Supplemental Registrations for computer programs titled 9.3.0.9 Engine and 9.3.0.9 UI.[6] Supplemental Registrations (ECF No. 172-2, 172-3). Although the 9.3.0.9 supplementation would seem counterproductive to a claim involving Plaintiffs' alleged infringement of Version 9.2.7.10, Defendant purported that Version 9.2.7 is a developmental offshoot of Version 9.3 rather than a predecessor and made various disclosures along those lines.[7]

This clumsy initial registration effort opened potential bases for Plaintiffs to challenge the preregistration requirement for Defendant's infringement counterclaim, because if Plaintiffs could demonstrate invalidities in the registration process, the Register might state that she would not have issued certificates for the DI Version 9.3.0.9 software, and the Court, by extension, might dismiss Defendant's infringement counterclaim based on the lack of a valid certificate. *See* 17 U.S.C. § 411(a). Plaintiffs hired an expert to

---

[6] "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration." 17 U.S.C. § 408(d). The initial registration remains valid and may continue to support an infringement action. *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 217 (S.D.N.Y. 2016). "The basic registration and the supplementary registration coexist with each other in the public record, and the supplementary registration augments — but does not supersede — the information set forth in the basic registration." U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, § 1802.

[7] The coexistence of parallel versions is controversial from a registration perspective because "each version of a computer program containing new, copyrightable authorship is considered a separate work" for registration purposes. U.S. Copyright Office, Circular 61, Copyright Registration of Computer Programs (Mar. 2021), at 2. However, the record can support the finding that both the most recent Version 9.3 (now discontinued) and Version 9.2.7 were derived from common Version 9.3.0.9 code. For example, the current Version 9.2 Engine (9.2.7.12) contains 3,496 files (of 5,090 total files) that are identical to codes files in the Version 9.3.0.9 Engine, updates another 309 Version 9.3 files, deletes 48, and adds 1,285 new files.

scrutinize the applications and the source code deposit[8] and, in time, Plaintiffs filed a motion to refer questions[9] to the Register of Copyright that might, depending on the Register's answers, invalidate Defendant's DI 9.x/9.3.0.9 registrations. Plaintiffs also filed a motion to exclude the supplemental registrations from the case and to stay unrelated proceedings.

I denied Plaintiffs' initial motions because I could not make heads or tails of them, but I allowed Plaintiffs to try its referral motion again with a summary-judgment-style factual presentation that I might be able to follow. Order on Pls.' Mot. to Refer, Mot. to Exclude and Mot. to Stay (ECF No. 184). Although the parties both noticed the Court that they intended to file merits-based summary judgment motions, and the Court was prepared to schedule them (ECF No. 158), merits-based summary judgment briefing was deferred in light of the unresolved referral controversy (ECF No. 193). The parties then briefed the referral motion and related motions between January and April of 2023.

---

[8] In addition to other concerns thus far identified, Plaintiff challenged the representation that the deposit was entirely authored by Defendant. The representative engine code Defendant submitted includes several hundred lines of slightly modified Sun-derived code (roughly seven pages of material). The supplementary registration application excludes any claim of copyright over code created by Sun Microsystems and modified slightly for use in the DI Engine. The deposit also contains duplicate source code submissions, most notably the first twelve and final twelve pages. And other portions of source code are "nearly identical," amounting to roughly 400 additional lines of code. These imperfections mean that somewhere between one-third and one-half of the 50-page deposit is "buggy," shall we say. Defendant was not able to supplement is source code deposit because the Copyright Office "will not issue a supplementary registration to correct an error in the deposit copy(ies) that were submitted with the application for basic registration." Compendium § 1802.7(E) (citing 37 C.F.R. § 202.6(d)(4)(ii)).

[9] Plaintiffs propose questions concerning the materiality of alleged prior publication, alleged version updating, and allegedly improper redaction. Plaintiffs also propose a question about the materiality of duplication and other lines of code that reduce the page count of the deposit. Questions to the Register of Copyrights Regarding Actian's Supplementary Registrations (ECF No. 196-3).

Meanwhile, Defendant continued with its registration efforts before the Copyright Office, seeking to clean up the mess and put to rest the litigation over its certificates of registration. In May 2023, Defendant filed its motion to supplement its counterclaims to reflect new registration developments. Defendant relates that its latest efforts were informed by the "highly-technical issues regarding the source code deposit" and the controversy over prior publication (assuming that the release of Version 9.2.7.10 amounted to publication, which publication predated the registration of Version 9.3.0.9). Mot. for Leave at 1–2. In short, Defendant applied for, and the Register awarded certificates of registration for additional versions of the DI software, including but not limited to the Data Integrator 9.2.7.10 Engine. Based on this development, Defendant seeks leave to supplement its infringement count to reference the latest registrations, end the referral battle, and move on to the merits. In support of its motion, Defendant asserts the following:

> The instant motion [for leave to file] will entirely moot the primary dispute presented in Plaintiffs' motion to refer, which is whether Actian improperly attempted to claim "previously published code." To resolve this dispute, Actian has obtained copyright registrations on the exact version that Plaintiffs contend was "previously published" – Version 9.2.7.10. Actian also registered a previous version, Version 9.2.6.6, which together with the existing copyright registration for Version 8.12, will entirely put to bed this argument, which was the focus of the [most recent] briefing …. In the New Registrations, Actian gave Plaintiffs the benefit of the doubt by designating these versions as "published," to narrow the issues in dispute and simplify this case.

*Id.* at 2. Defendant further observes that its most recent registrations are based on source code deposits "created using a different process that honors Plaintiffs' criticisms, obviating Plaintiffs' potential argument regarding 'duplication' in the deposits, inclusion of 'third-

7

party' code, redactions that are not 'trade secrets,' or that the deposits are not 'representative' of the underlying code." *Id.* at 6.

In opposition to the request to supplement the infringement counterclaim, Plaintiffs argue that supplementation should only be allowed for good cause since the request falls after the scheduling order's deadline for amendment of pleadings, that supplementation will not save anybody any work because the motion to refer will not be mooted, that supplementation will further complicate the case and require more discovery, and that supplementation is futile (or immaterial) regarding certain recent registrations (Versions 8.12 and 9.2.6.6, which are not squarely at issue but evidently are predecessors of both Version 9.3.0.9 and Version 9.2.7.10).

## Discussion

When a copyrighted work is infringed, the copyright owner generally cannot file a "civil action for infringement of the copyright" unless the owner previously registered the work with the United States Copyright Office. 17 U.S.C. § 411(a). *See also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 944–45 (2022); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019). Because the registration requirement is "akin to an administrative exhaustion requirement," *Fourth Estate*, 139 S. Ct. at 887, a copyright infringement action (or counterclaim) filed before the claimant registers the copyright is subject to dismissal, without prejudice, for failure to state a claim. *Cortes-Ramos v. Martin-Morales*, 956 F.3d 36, 43 (1st Cir. 2020). Dismissal may be avoided, however, by registering the copyright during the litigation, depending on the circumstances. *Id*. at 44.

The registration process involves submission of a copy of the copyrighted work to the Register of Copyrights (what the Copyright Act calls "the deposit"), along with an application form and fee. 17 U.S.C. §§ 408–409. The Copyright Office will issue a certificate of registration if it determines that the material deposited is copyrightable but will refuse registration if the material deposited is not copyrightable or the submission is invalid for some other reason. *Id.* § 410(a), (b). The Copyright Office instructs persons seeking to register copyrights in computer programs to deposit 50 pages of representative source code unless the program's entire source code can be printed out in fewer than 50 pages. U.S. Copyright Office, Circular 61, Copyright Registration of Computer Programs (Mar. 2021), at 3. Typically, the representative portion will consist of the first 25 pages and the final 25 pages. *Id.* If the program is derivative (comprised in part of earlier works of authorship), a registration "does not cover any previously published, previously registered, or public domain material that may appear in the program or any authorship fully or partially owned by a third party." *Id.* at 4. The deposit for such a registration should contain "new or revised material," but need not omit every line of old, unrevised material. *Id.*

At times, applicants for a certificate of registration will make errors in either the application or the deposit, or both, yet still obtain certificates from the Copyright Office. Errors may pertain to either the facts associated with the copyrighted work or the law associated with the registration process. *Unicolors*, 142 S. Ct. at 945 ("Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration."). Because the Register will at times issue certificates despite the presence of errors in the application or

9

deposit, the Copyright Act states that the Register's certificate will still support an infringement action by the owner of the copyrighted work unless both: "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Id*. § 411(b)(1). Furthermore, the Act instructs: "In any case in which inaccurate information described under paragraph (1) [(A)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* § 411(b)(2).

    The Copyright Act also addresses the concern over errors in copyright submissions by authorizing the Register to "establish, by regulation, formal procedures for the filing of an application for supplementary registration, to correct an error in a copyright registration or to amplify the information given in a registration." *Id*. § 408(d). The Copyright Act does not explain how courts should reconcile the section 408 authorization to correct registration errors or amplify information by supplementary registration with the section 411(b) concern associated with the submission of known misstatements in the underlying application.

    When it comes to short-circuiting a litigation by invalidation of both an initial and supplementary certificate, the standard of review for a section 411(b) court proceeding should differentiate between evidence that a certificate holder "should have known" that its application (as supplemented) or its deposit contained a misstatement (which would not require invalidation) and evidence that the certificate holder knew or was willfully blind to

10

the fact that the application or deposit would not receive a certificate in the absence of the misstatement (which would require invalidation).  *See, e.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067 (9th Cir. 2022) ("[A] registration is invalid under § 411(b) if the registrant perpetrated fraud on the Copyright Office by knowingly misrepresenting material facts."), *cert. denied*, 143 S. Ct. 2583 (2023); *Roberts v. Gordy*, 877 F.3d 1024, 1029 (11th Cir. 2017) (holding that § 411(b) "codifies the defense of Fraud on the Copyright Office"); *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 618, 624–25 (7th Cir. 2013) (noting that § 411(b)(1) requires a showing of fraud on the Copyright Office).  However, when it comes to deposits, which cannot be corrected through supplementation, Compendium § 1802.7(E) (citing 37 C.F.R. § 202.6(d)(4)(ii)), scenarios may arise in which the invalidity of a registration effort can be assessed on a technical or legal basis, regardless of intend to defraud.  *See Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007) (observing that the purpose of the registration prerequisite "would be undermined if a fraudulent *or invalid* application could provide a plaintiff entree to the federal courts" (emphasis added)); *see also id.* (invalidating certificate of registration in the absence of a showing of intent to defraud)).  But the mere proof of a misstatement in an application or error in a deposit is not necessarily dispositive of an infringement claim.  *Cf. id.* ("[M]ost errors or mistakes in a copyright registration application will be inadvertent or immaterial, and thus will not invalidate the application (or any resulting certificate).")

      The foregoing realities of copyright registration and litigation, unfortunately, lead to something of a mad registration scramble in the lead-up to litigation and sometimes, as

here, in the course of litigation. Unfortunately, the registration process has been protracted in this case, continuing as it has throughout the discovery stage of litigation yet—thanks to the stay—without extending into or discombobulating summary judgment merits briefing. For reasons that follow, I conclude that it is appropriate in this case to acknowledge the reality of the latest registrations and move on.

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Supplemental pleading is "encouraged 'when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" *U.S.* ex rel. *Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4 (1st Cir. 2015) (quoting 6A Wright et al., Federal Practice and Procedure § 1504, at 258–59). Leave to introduce a supplemental pleading is not available as of right, but rather is subject to the Court's discretion. *Id.*; *see also Cortes-Ramos*, 956 F.3d at 43–44 (remanding copyright case upon review of order dismissing the case so that the district court could address whether supplementation to introduce the fact of registration should be allowed).

Defendant's Motion for Leave to Supplement and Plaintiffs' Opposition invite me to evaluate whether there should be a hard and fast deadline after which registration-related supplementation should not be allowed in a copyright case. Faced with a choice between, on the one hand, additional delay to accommodate a referral based on the registrations of Versions 9.x and 9.3.0.9 and, on the other hand, acknowledgement of a more reliable

registration of the allegedly infringed Version 9.2.7.10 (and certain of its forebears), I find Defendant's Motion for Leave appealing. Frankly, it would be good to leave the 9.x basic registration and 9.3.0.9 supplementary registration controversy(ies) behind and simply get to the merits of this case because it is not apparent what effect invalidation of the 9.3.0.9 certificate would have here given the reality of the other registrations.

Additionally, based on my review of the record in support of the motion for referral, I find that the person who prepared the 9.x / 9.3.0.9 source code deposit made certain errors that were the result of inexperience with the registration process. Although Plaintiffs characterize the individual's lack of care as "willful blindness," the evidence does not suggest the existence of any cause for the deposit preparer or anyone else involved in the application process to believe that the work in question was not a copyrightable work or was not copyrightable by Defendant, or that the Register would not have issued certificates of registration but for the "errors" in the deposit. Similarly, with regard to the alleged misstatements in the application concerning prior publication, novelty, and the inclusion but later disclamation of third-party code, the record does not support a finding of any effort on Defendant's part to perpetrate a fraud on the Copyright Office by misrepresenting something known to be material to the copyrightability of the work in question. This means that, at best, shortcomings in the page count of the version 9.3.0.9 deposit might justify asking the Register whether the deposit of fewer than 50 pages of representative code warrants invalidation of a certificate, and whether it matters that those pages reveal an original work of authorship (which it appears to me that they likely do).

Ultimately, I am not persuaded that the referral of such questions to the register would have any salutary effect on this litigation. To the contrary, the proposal strikes me as unnecessary given that the Register has in the meantime issued multiple certificates for various iterations of the DI software, including specifically Version 9.2.7.10 and certain of its predecessors. The Register's actions support the motion to supplement.

Given that the proposal to refer questions to the Register is unnecessary in light of the latest registrations and would only occasion further delay in the proceedings with little or no promise of a clear resolution to the § 411(a) registration requirement, and given that much of the delay in this case has been occasioned by my own difficulty coming to grips with the referral request, I am not persuaded that I should approach Defendant's request for leave to supplement with a punitive or "claim preclusive" mindset based on the delay of the case. Yes, delay has occurred, but Defendant has been reasonably attentive to the need for registration, may have had it sufficiently established already, and should not be precluded from taking a belt and suspenders approach to shore up the Court's confidence that the infringement counterclaim is backed up by an appropriate certificate of registration. Furthermore, contrary to some language employed by Plaintiffs, no new infringement claims arise from the supplementation, only new and better reasons to conclude that the registration requirement is satisfied.

In summary, allowing supplementation will promote the economic and speedy disposition of the entire controversy between the parties, should not cause undue delay or trial inconvenience, and will not prejudice the rights of the parties insofar as the merits of

the case are concerned.[10] This case would proceed, in any event, on declaratory judgment claims and the contract counterclaim. Allowing a complete resolution is worthwhile despite the regrettable passage of time and the possible need to permit some additional, limited, registration-related discovery.

## Conclusion

For the reasons set forth above, Plaintiffs' Motion to Refer (ECF No. 196) is DENIED, Defendant's Motion to Exclude (ECF No. 194) is DENIED,[11] and Defendant's Motion for Leave (ECF No. 213) is GRANTED. Defendant shall supplement its counterclaim in the manner represented in its proposed draft counterclaim within 10 days of this order.

SO ORDERED.

Dated this 2nd day of October, 2023.

                                                             /s/ Lance E. Walker  
                                                       UNITED STATES DISTRICT JUDGE

---

[10] Because supplementation is granted pursuant to Rule 15(d) to allow supplemental references to the new certificate of registration for Version 9.2.7.10, I will also allow supplementation regarding registration of the Data Integrator 9.2.6.6 Engine and UI as well as amendment, pursuant to Rule 15(a), in regard to the earlier-registered Data Integrator 8.12 Engine and UI that Defendant could have but failed to identify in its current counterclaim. The addition of these registration references is, after all, not equivalent to the assertion of new claims, but merely groundwork to curtail unwarranted litigation over the copyright owner's access to the courts.

[11] I deny the Motion to Exclude because the expert's testimony and reports were useful to my review. It has long been understood that the admissibility of expert opinion testimony is primarily a question of utility. *See* Fed. R. Evid. 702 Advisory Committee's Note to 1972 proposed rules ("Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier.").